UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | |
|---|---|
| HARRY RYDER, Individually and on Behalf of All Others Similarly Situated, | ) Case No. 8:09-CV-2058-T-27TGW ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| DIVERSIFIED AMBULANCE BILLING, | ) |
| LLC and DIVERSIFIED AMBULANCE | ) |
| BILLING – SOUTHEAST, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED MEMORANDUM
OF LAW FOR AN AGREED-TO AWARD OF (I) ATTORNEYS' FEES AND
(II) INCENTIVE AWARD TO CLASS REPRESENTATIVE**

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................1

II.    PLAINTIFF'S COUNSEL HAVE MUCH EXPERIENCE IN CONSUMER LITIGATION....................................................................................................3

III.    HISTORY OF THE LITIGATION AND SETTLEMENT ...........................3

    A.    The Litigation.....................................................................................3

    B.    The Settlement ...................................................................................4

IV.    THE LEGAL FRAMEWORK.........................................................................6

    A.    Rule 23 Authorizes Agreements on Attorneys' Fees in Settlements................6

    B.    An Agreed-Upon Fee Is Preferred and Entitled to Deference ...........................6

V.    THE REQUESTED FEE AND EXPENSE AMOUNT IS REASONABLE.................9

    A.    The Litigation Was Novel and Undesirable......................................9

    B.    Class Counsel Bore Significant Risk and Financial Burden Due to the Contingent Nature of the Fee..........................................................................10

    C.    This Litigation Required Significant Legal Acumen......................................12

    D.    The Common Monetary and Therapeutic Benefits to the Class Achieved by the Settlement Warrants the Fee Request ..................................13

    E.    The Results Achieved by Class Counsel Provide Important Monetary and Therapeutic Benefits to Florida HMO Subscribers...................................17

VI.    CLASS COUNSELS' EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ............18

VII.    PLAINTIFF IS ENTITLED TO MODEST INCENTIVE AWARD .........................18

VIII.    CONCLUSION...............................................................................................19

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Abrams v. Lightolier, Inc.*,
    50 F.3d 1204 (3d Cir. 1995)........................................................................18

*Arenson v. Bd. of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ...........................................................16

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .................11, 17

*Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*,
    778 F.2d 890 (1st Cir. 1985).....................................................................15

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .................................................................13

*Camp v. Progressive Corp.*,
    No. Civ. A. 01-2680, Civ. A. 03-2507, 2004 WL 2149079
    (E.D. La. Sept. 23, 2004).........................................................................19

*Carrabba v. Randalls Food Markets, Inc.*,
    191 F. Supp. 2d 815 (N.D. Tex. 2002) ....................................................19

*Conley v. Sears Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) .................................................................14

*Cosgrove v. Sullivan*,
    759 F. Supp. 166 (S.D.N.Y. 1991)...........................................................14

*Deloach v. Philip Morris Cos.*,
    No. 1:00CV01235, 2003 WL 23094907 (M.D.N.C. Dec. 19, 2003)..........................16

*Di Giacomo v. Plains All Am. Pipeline*,
    No. Civ.A.H-99-4137, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001)......................15

*Dowdell v. City of Apopka*,
    698 F.2d 1181 (11th Cir. 1983) ...............................................................18

*Glendora Cmty Redevelopment Agency v. Demeter*,
    202 Cal. Rptr. 389 (Cal. Ct. App. 1984)...................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................7, 9

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ........................................................................18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..................................................................................7

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002)...................................................................16

*In re Beverly Hills Fire Litig.*,
    639 F. Supp. 915 (E.D. Ky. 1986) ...........................................................15

*In re Buspirone Antitrust Litig.*,
    Civ. A. No. 01-MD-1410 (S.D.N.Y. Apr. 11, 2003) ................................14

*In re Catfish Antitrust Litig.*,
    939 F. Supp. 493 (N.D. Miss. 1996)........................................................19

*In re Cenco, Inc. Sec. Litig.*,
    519 F. Supp. 322 (N.D. Ill. 1981) ............................................................17

*In re Cendant Corp. Prides Litig.*,
    51 F. Supp. 2d 537 (D.N.J. 1999), *vacated and remanded*, 243 F.3d 722
    (3d Cir. 2001), *on remand*, No. 98-2819 (D.N.J. June 11, 2002)...............15

*In re Continental Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) .....................................................................7

*In re Fernald Litig.*,
    No. C-1-85-149, 1989 WL 267038 (S.D. Ohio Sept 29, 1989)..................15

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .......................*8*

*In re Granada P'ship Sec. Litig.*,
    803 F. Supp. 1236 (S.D. Tex. 1992) .........................................................19

*In re IDB Commc'n Group, Inc., Sec. Litig.*,
    No. 94-3618 (C.D. Cal. Jan. 17, 1997) .....................................................15

*In re Lease Oil Antitrust Litig. (No. II)*,
    186 F.R.D. 403 (S.D. Tex. 1999), *reversed by*, *remanded by*, 570 F.3d 244
    (5th Cir. 2009)..........................................................................................19

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990)...........2

*In re Merry-Go-Round Enter.*,
    244 B.R. 327 (Bankr. D. Md. 2000) ...........................................................................14

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
    No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) .................................................11

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ........................................................................14

*In re Veritas Software Corp. Sec. Litig.*,
    No. C-03-0283 MMC, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005) .......................16

*In re Vitamins Antitrust Litig.*,
    398 F. Supp. 2d 209 (D.D.C. 2005) ..........................................................................16

*In re Washington Public Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .....................................................................................11

*In re Worldcom, Inc. Sec. Litig.*,
    No. 02 CIV3288(DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ....................15

*In re Xcel Energy, Inc., Sec., Deriv., & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) .......................................................................16

*Johnson v. Ga. Hwy. Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .......................................................................................6

*Kenny A. ex rel. Winn v. Perdue*,
    454 F. Supp. 2d 1260 (N.D. Ga. 2006), *aff'd*, 532 F.3d 1209
    (11th Cir. 2008).........................................................................................................13

*Ladewig v. Ariz. Dep't. of Revenue*,
    63 P.3d 1089 (Ariz. Tax. Ct. 2003)...........................................................................15

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
    222 F.3d 1142 (9th Cir. 2000) .....................................................................................7

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987) ...............................................................................7

*Malchman v. Davis*,
    761 F.2d 893 (2d Cir. 1985)..........................................................................................7

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................................................16

*Merkle v. Neighborhood Heath P'ship, Inc.*,
    Case No. 502005CA004516XXXX MB(AG) (Fla. 15th Jud. Cir.)............................13

*Merkle v. Vista Healthplan, Inc.*,
    Case No. 10-80347-CIV-MORENO (S.D. Fla.)..........................................13

*Mills v. Electric Auto Lite Co.*,
    396 U.S. 375 (1970)..............................................................13

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993)..................................................18

*Muchnick v. First Fed. Sav. & Loan Assoc.*,
    Civ.A. No. 86-1104, 1986 U.S. Dist. LEXIS 19798
    (E.D. Pa. Sept. 30, 1986) .......................................................14

*Municipal Authority of Bloomsburg v. Pennsylvania*,
    527 F. Supp. 982 (M.D. Pa. 1981).................................................16

*Purdie v. Ace Cash Express, Inc.*,
    No. Civ. A. 301CV1754, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ................19

*Rabin v. Concord Assets Group, Inc.*,
    No. 89 CIV.6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) .................................16

*Ramos v. Philip Morris Cos.*,
    743 So. 2d 24 (Fla. 3d DCA 1999) ...............................................15

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997).................................................15

*Ryan v. City of Chicago*,
    654 N.E. 2d 483 (Ill. Ct. App. 1995) ............................................17

*Spark v. MBNA Corp.*,
    289 F. Supp. 2d 510 (D. Del. 2003)...............................................16

*Texas State Teachers Ass'n v. San Antonio Indep. Sch. Dist.*,
    584 F. Supp. 61 (W.D. Tex. 1983)................................................18

*Weinberger, et al. v. Aetna Health, Inc.*,
    Case No. 06-20249-CIV-MORENO (S.D. Fla.)..........................................13

*Weiss v. Mercedes-Benz of N. Am.*,
    899 F. Supp. 1297 (D.N.J. 1995) .................................................14

*Willson v. New York Life Ins. Co.*,
    No. 94/127804, 1995 N.Y. Misc. LEXIS 652 (N.Y. Sup. Ct. Nov. 8,
    1995), *aff'd*, 270 Fed. Appx. 153 (3d Cir. 2008) ........................................16

*Wilson v. Bank of Am. Nat'l Trust & Sav. Ass'n.*,
    No. 643872 (Cal. Super. Ct. Aug. 16, 1982) ...........................................14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §1692, *et seq.*.......................................................................1, 2, 3, 4, 5

Federal Rules of Civil Procedure
    Rule 23 ...............................................................................................4, 6
    Rule 23(b)(2).........................................................................................5
    Rule 23(b)(3).........................................................................................5
    Rule 23(h) .............................................................................................6

Fla. Stat. §501.201, *et seq.* .............................................................1, 4, 10

Fla. Stat. §559.55, *et seq.*..........................................................1, 2, 3, 4, 5, 10

Fla. Stat. §641.3154 .........................................................................4, 10

M.D. Fla. L.R. 3.08(a) .............................................................................4

**SECONDARY AUTHORITIES**

Richard Posner,
    *Economic Analysis of Law* §21.9 (3d ed. 1986)...........................................10

Theodore Eisenberg and Geoffrey P. Miller,
    *Attorney Fees in Class Action Settlements: An Empirical Study*,
    1 Jrl. Emp. L. Stud. 27 (March 2004) .......................................................17

Plaintiff Harry Ryder ("Plaintiff"), respectfully moves Court for an award of attorneys' fees and reimbursement of expenses, and for an incentive award to Plaintiff, in connection with the class action settlement of this action, and submits this memorandum of law in support thereof.

## I.    INTRODUCTION

Plaintiff and his counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Lee & Amtzis, P.L. ("Lee & Amtzis") (collectively, "Class Counsel"),[1] have succeeded in obtaining significant monetary and therapeutic benefits to cure the harm addressed in Plaintiff's Class Action Complaint [Dkt. No. 1]. The crux of Plaintiff's lawsuit was the allegedly improper practice by defendants Diversified Ambulance Billing, LLC and Diversified Ambulance Billing—Southeast, Inc.'s (collectively, "DAB") of "balance billing" of Florida HMO subscribers for ambulance services for amounts other than the insureds' co-payments and deductibles, which Plaintiff alleges constitutes a violation of the federal Fair Debt Collections Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §559.55, *et seq*. ("FCCPA"), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*. ("FDUTPA").

The Settlement Agreement requires DAB to reimburse Class Members for the amount of any payment actually paid to DAB above his or her co-payment or deductible, if any, and an additional $10.00, representing a portion of the statutory damages available to the Class under

---

[1]    This Court conditionally certified Robbins Geller and Lee & Amtzis as Class Counsel in its Order of Preliminary Approval dated October 6, 2010 [Dkt. No. 40, at p. 2].

the FDCPA and the FCCPA.  In addition, DAB has agreed to implement new policies and procedures in connection with the operation of their businesses that will directly affect the collection of payments by DAB from Florida HMO subscribers.

Plaintiff and Class Counsel achieved these monetary and therapeutic benefits to cure the harm addressed in Complaint, and have done so without needlessly expending the Court's and the parties' time and resources on unnecessary motion practice, discovery disputes, hearings, and other matters.  *See*, *e.g.*, *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements-especially in complex class action cases-should be done.").  In addition, Class Counsel expended time and resources on this case, shouldering them on a contingent basis and with the real risk of no recovery.  Herein, and along with the Joint Declaration of Class Counsel ("Joint Decl."), filed contemporaneously herewith, Plaintiff respectfully seeks an award of fees and expenses of $225,000.

DAB does not oppose this request, which results in a modest lodestar multiplier of 2.24. *See* Joint Decl., ¶38.

To be sure, the issues in this case are somewhat complex, the legal hurdles are many and substantial, the opponent was a company ably defended by highly competent counsel, and the time and expense demands were not insubstantial.  Plaintiff's counsel succeeded in this case despite the possibly daunting task of addressing and arguing for novel questions of law before this Court regarding the liability of a debt collector for violations of Florida's balance billing prohibition statute.  Plaintiff researched, prepared and filed a lengthy class certification motion

and reviewed and analyzed documents produced by DAB. In the end, the result achieved is a monetary and therapeutic recovery to address the harm presented by DAB's billing practices.

As more fully stated herein, because Plaintiff's fee request was well-earned, well-deserved, and unopposed by DAB, Plaintiff respectfully asks this Court to grant this Motion.

## II.   PLAINTIFF'S COUNSEL HAVE MUCH EXPERIENCE IN CONSUMER LITIGATION

Class Counsel is comprised of some of the most reputable and skilled plaintiffs' complex litigation firms. Both firms have several decades of experience in complex litigation and are among the most reputable and skilled plaintiffs' complex litigation firms in the nation [*see* Dkt. Nos. 23-4, 23-5 (firm resumes of Class Counsel)].

Class Counsel's thorough investigation, involvement, and due diligence have made them fully familiar with the facts and law of the case and the risks involved in the further prosecution of the action. Without such expertise, it is unlikely that DAB would have reached the Settlement in this case or created the monetary and therapeutic benefits for Florida consumers set forth in the Settlement.

## III.   HISTORY OF THE LITIGATION AND SETTLEMENT

### A.   The Litigation

This action was brought as a putative class action due to the Plaintiff's allegation that DAB was improperly "balance billing" for ambulance services provided to Florida health maintenance organization ("HMO") subscribers in Florida, including Plaintiff [Dkt. No. 1].

Plaintiff, on behalf of himself and the conditionally certified Class of Florida residents, alleged claims against DAB for violation of the FDCPA, the FCCPA, and the FDUTPA, as well for unjust enrichment, money had and received, and injunctive relief.

On November 24, 2009, DAB filed its Answer and Affirmative Defenses to the Complaint [Dkt. No. 13]. DAB contended generally, among other things, that DAB's practices did and do not contravene Florida Statute §641.3154, proscribing certain balance billing practices of Florida HMO subscribers, and, therefore, Plaintiff had no claim against DAB under the FDCPA, the FCCPA, FDUTPA, or a private right of action under Florida Statute §641.3154. DAB also alleged that Plaintiff's Complaint did and does not meet the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

Between December 2009 and March 2010, the Parties engaged in certain formal document discovery, and, on March 22, 2010, Plaintiff moved for class certification, [Dkt. No. 23], which was referred by the Court to Magistrate Judge Wilson [Dkt. No. 24].

### B.     The Settlement

Prior to the time in which DAB was required to file a response to Plaintiff's class certification, motion, the Parties began discussing a possible global resolution of the action. And, on May 7, 2010, counsel for the Parties reached an agreement in principle to settle the action, and executed a Settlement Term Sheet to that effect.

On May 10, 2010, the parties filed a Joint Notice of Settlement with the Court, pursuant to Local Rule 3.08(a) [Dkt. No. 30].

On July 8, 2010, the Parties filed a Joint Motion for Preliminary Approval of Class Action Settlement [Dkt. No. 31], attaching thereto the Settlement Agreement for the Court's review and consideration.

As detailed in the Settlement Agreement, DAB has agreed to reimburse Class Members for the amount of any payment actually paid to DAB by Class Members in respect to a Relevant

Charge above his or her co-payment or deductible, if any, and an additional $10.00, representing a portion of the statutory damages available to the Class under the FDCPA and the FCCPA. DAB has also agreed that, for settlement purposes, a class would be certified pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that DAB would pay for the costs of notice and claims administration, and would separately pay Plaintiff's counsel's attorneys' fees and costs. In addition, in part as a result of this litigation, DAB has agreed to implement new policies and procedures in connection with the operation of their businesses that will directly affect the collection of payments by DAB from Florida HMO subscribers. DAB will provide this benefit automatically – even to people who exclude themselves from the Class.

On October 6, 2010, the Court entered an Order of Preliminary Approval [Dkt. No. 40], which, among other things: (a) preliminarily approved the Settlement; (b) conditionally certified the Class, and appointed Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel; (c) scheduled a Fairness Hearing for February 14, 2011; (d) approved the form and manner of notice to the Class (along with the claim form), and directed that the claims administrator, First Class, Inc., to provide direct mail and publication notice to the Class; and (e) provided Class Members until January 31, 2011 to comment on, object to, or exclude themselves from the Settlement.

Pursuant to the Order of Preliminary Approval, on November 5, 2010, First Class, Inc. caused the approved notice and claim form to be mailed to directly to over 500 Class Members, and the approved summary notice to be published in the *The Miami Herald* (Miami edition), *The South Florida Sun-Sentinel* (Broward edition), *The Palm Beach Post*, the *Tampa Tribune*, the *Orlando Sentinel*, the *Daytona Beach News-Journal*, and the *Florida Times-Union*. In addition,

the notice and claim form were posted on the Internet at http://dabsettlement.com/. *See* Affidavit of Margaret A. Campos [Dkt. No. 42].

The time period for objecting to the settlement expired on January 31, 2011, and Class Counsel have received no objections to the attorneys' fee and expense request specifically set forth in the notice.

## IV. THE LEGAL FRAMEWORK

### A. Rule 23 Authorizes Agreements on Attorneys' Fees in Settlements

It is common for parties to a class settlement to agree that a defendant will pay attorneys' fees to plaintiffs' counsel outside of the common fund established for the Class. Such an arrangement poses no problem for Court approval, so long as the amount of the fee is reasonable under the circumstances. Rule 23(h) incorporates this principle and provides: "In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs *authorized* by law *or by agreement of the parties*." Fed. R. Civ. P. 23(h).[2]

### B. An Agreed-Upon Fee Is Preferred and Entitled to Deference

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. As the Supreme Court explained, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a

---

[2]     Emphasis is added and citations are omitted unless otherwise noted.

settlement as to attorney's fees.").[3]  Accordingly, courts are permitted to award attorneys' fees and expenses where all parties have agreed to the amount, subject to court approval.  Indeed, the Supreme Court has suggested that such agreements **be encouraged** as a matter of public policy. *Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").

The virtue of a fee negotiated by parties at arms' length is that it is, essentially, a market-set price resulting from opposing interests.  Defendants have an interest in minimizing the fee; Plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court may award if the matter were litigated.  In *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests; according to Judge Posner: "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *Id*. at 568.  "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id*.

---

[3]      *See also Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) ("an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged."); *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement benefits); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding the district court's award of attorneys' fees, citing lack of abuse of discretion, where the court had approved attorneys' fees and costs of $5.2 million that were negotiated after the final settlement was achieved); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").

"Markets know market values better than judges do." *Id*. at 570. "The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." *Id*. at 572.

The court in *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992), echoed Judge Posner's reasoning in awarding a negotiated fee of $8 million; as the *First Capital* court noted:

> The fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.

The rationale espoused by Judge Posner, the *First Capital* court and other courts equally applies here. DAB sought to minimize the fees that it must pay in addition to the monetary and therapeutic benefit to cure the harm addressed in the Complaint, and therefore DAB's counsel had a keen interest in negotiating the smallest amount its client would have to pay. Plaintiff's counsel, on the other hand, after negotiating the best settlement that they could obtain for the Class, wished to receive full compensation, as the law encourages, for undertaking this complex class action litigation and devoting the resources and skill necessary to successfully overcome DAB's defenses and legal arguments and bring this case to a successful conclusion. The fee requested in this motion was negotiated at arm's-length by sophisticated counsel familiar with the case, the risks for both sides, the nature and result obtained for the Class, the customary fees awarded by courts in similar types of cases, and the magnitude of the fee the Court may award if the matter were litigated. Furthermore, attorneys' fees were ***not*** even negotiated or discussed

until after agreement was reached between the parties on all other terms of the Settlement. *See Hanlon*, 150 F.3d at 1029 (citing with approval that "class counsel and [the defendant] did not negotiate or discuss attorneys' fees until after the final settlement").[4] Thus, this Court should give the agreed-upon fee deference in analyzing the reasonableness of Class Counsel's fee application.

## V.     THE REQUESTED FEE AND EXPENSE AMOUNT IS REASONABLE

Several factors demonstrate Class Counsel's requested fee amount is reasonable in light of the facts of this case.

### A.     The Litigation Was Novel and Undesirable

This case was undoubtedly novel and undesirable, which in turn made it risky, and the results under the Settlement all the more significant. The case involved litigating a claim with virtually no precedent about whether a billing company's practice of sending collection letters to recipients of ambulance services to pay the balance of their bill (*i.e.*, the amounts not paid by the customer's HMO), violate Fla. Stat. §641.3154 and, *ipso facto*, FDUTPA and the FCCPA.

By any reasonable view, this case was undesirable because substantial risks and uncertainties were present from the outset of this case that made it far from certain that any relief for the Class would be obtained. Continued litigation through trial inevitably would have delayed any recovery to Class Members. Class Counsel carefully considered the threat of protracted proceedings.

---

[4]     Because fees and expenses are being paid outside of the benefit to the Class, were the Court to reduce the award of Class Counsel's fees, that would not confer a greater benefit upon the Class, but rather would only benefit DAB's coffers.

Likewise, this is the type of litigation that other firms may shy away from because the subject matter is too esoteric or "technical." While Florida does have a balance-billing prohibition by healthcare providers for HMO subscribers, it is anything but clear whether ambulance service providers are covered by that prohibition, whether DAB is a "debt collector" under the FCCPA, and whether Plaintiff could sue under FDUTPA or the FCCPA despite the lack of an express private right of action under Fla. Stat. §641.3154. The issues were complex, the legal hurdles were many and substantial, the opponent was ably defended, and the time and expense demands would clearly be substantial. Also, although Class Counsel were confident that they would develop a convincing case, they were also aware that, historically, there was a real possibility that this Court could reject Plaintiff's interpretation of the law. Despite the undesirability of this case, Class Counsel took it on, persevered, and achieved a very good Settlement.

**B.    Class Counsel Bore Significant Risk and Financial Burden Due to the Contingent Nature of the Fee**

Class Counsel took on this litigation on a contingent basis. Contingency arrangements have become widely used because they serve important functions in the marketplace. They provide access to legal services to many individuals who could not otherwise pay for them. They assure that the economic interests of attorneys are aligned with those of their clients. They foster efficient use of resources by attorneys, and are easily enforced without the secondary litigation.

It is an established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that

may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose.

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Indeed, courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding attorneys' fees in a contingent fee case, a district court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994). This Court has found that "[a] contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). "This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Id.*

The same is true here. From the outset, Class Counsel understood that they were likely about to embark on complex, expensive and lengthy litigation. This is certainly not the type of case where any recovery was assured. This case presented a number of legal challenges of successfully interpreting and presenting a body of law on the interplay of Florida's balance

billing prohibition and Florida's consumer protection laws. Instead, this case was undertaken by Class Counsel on a wholly contingent basis. No client or Class member was asked to pay fees or advance costs. Unlike DAB's counsel, who were compensated on a current basis, Class Counsel have received no compensation over the past year and have incurred approximately $99,387 in legal fees and $2,080.94 in litigation expenses, *see* Joint Decl., ¶¶37-43, providing legal services to Plaintiff and the Class. Further, absent this Settlement, there was no guarantee that the Class Members would obtain any relief from DAB, which would result in Class Counsel receiving nothing for their work on behalf of Plaintiff and the Class. Class Counsel bore these risks and were prepared to litigate this case to trial and on further appeal, if necessary.

Despite these risks, Class Counsel accepted this case in an attempt to address the balance billing of Florida HMO subscribers. It was because of this risk that Class Counsel accepted, that there is a good monetary and therapeutic benefit to cure the harm addressed in the Complaint. The fee requested in this case must take the risks Class Counsel shouldered into consideration. Based on this level of risk undertaken, an award to Class Counsel of $225,000 for attorneys' fees and costs is eminently reasonable.

### C. This Litigation Required Significant Legal Acumen

Plaintiff and Class Counsel were responsible for the Settlement. The quality of Class Counsel's work in this case – particularly the ability to obtain an early resolution – was excellent and is ultimately reflected in the result, which was obtained in the face of stiff opposition. Moreover, this litigation required specialized expertise in consumer and Florida healthcare law

that few firms may have been willing to master to prosecute the case successfully.[5]  Uncertainty

of result and the likelihood of appeal were omnipresent in this case.  As such, Class Counsel

undertook significant risk in accepting Plaintiff's case, but nevertheless achieved a good

monetary and therapeutic benefit to cure the harm addressed in the Complaint.

> **D.**    **The Common Monetary and Therapeutic Benefits to the Class**
> **Achieved by the Settlement Warrants the Fee Request**

It is black letter law that plaintiffs' attorneys are entitled to a fee for procuring either

monetary or nonmonetary benefits for an ascertainable class, such as here.  *See*, *e.g.*, *Mills v.*

*Electric Auto Lite Co.*, 396 U.S. 375, 391-94 (1970) (recognizing the "common fund" doctrine

exception to the "American rule"); *see also Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d

768, 771 (11th Cir. 1991); *Kenny A. ex rel. Winn v. Perdue*, 454 F. Supp. 2d 1260, 1270-71

(N.D. Ga. 2006), *aff'd*, 532 F.3d 1209 (11th Cir. 2008).  Plaintiff's lawsuit was intended to

achieve a benefit on behalf of Florida HMO subscribers who were balance billed by DAB, and it

is axiomatic that Plaintiff achieved this result by virtue of repayment of the amounts improperly

billed, an additional $10.00, as well as the business practice changes at DAB.

Clearly, Class Counsel's fee request is reasonable for this type of case.  Comparing

Plaintiff's fee request with the lodestar amount yields a multiplier of 2.24. *See* Joint Decl., ¶38.

The following is just a sampling of fee awards in complex cases that used a lodestar multiplier:

---

[5]     Class Counsel have worked together to successfully prosecute and settle several large and
important healthcare class actions over the past few years, including *Weinberger, et al. v. Aetna*
*Health, Inc.*, Case No. 06-20249-CIV-MORENO (S.D. Fla.), *Merkle v. Vista Healthplan, Inc.*,
Case No. 10-80347-CIV-MORENO (S.D. Fla.), and *Merkle v. Neighborhood Heath P'ship, Inc.*,
Case No. 502005CA004516XXXX MB(AG) (Fla. 15th Jud. Cir.).

## Multipliers of Between 7-21

- *In re Merry-Go-Round Enter.*, 244 B.R. 327 (Bankr. D. Md. 2000) (awarding $71 million fee representing a 19.6 multiplier);[6]

- *Glendora Cmty Redevelopment Agency v. Demeter*, 202 Cal. Rptr. 389, 398-99 (Cal. Ct. App. 1984) (awarding a multiplier of 12);

- *Wilson v. Bank of Am. Nat'l Trust & Sav. Ass'n.*, No. 643872 (Cal. Super. Ct. Aug. 16, 1982) (fee multiples up to 10 times hourly rate awarded);

- *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee that resulted in a multiplier of 9.3 times hourly rate);

- *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (awarding a multiplier of 8.74);

- *Conley v. Sears Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) (awarding a multiplier of 8.9 in a derivative action);

- *In re Buspirone Antitrust Litig.*, Civ. A. No. 01-MD-1410 (S.D.N.Y. Apr. 11, 2003) (awarding an 8.46 multiplier);

- *Muchnick v. First Fed. Sav. & Loan Assoc.*, Civ.A. No. 86-1104, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) (awarding multiplier of 8); and

- *Newman v. Carbiner Int'l, Inc.*, 1:99-cv-02271-GEL (S.D.N.Y. Oct. 25, 2001) (awarding a 7.7 multiplier).

## Multipliers of 6 and Above

- *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (awarding a 6.96 multiplier);

- *Triangle Indus., Inc. S'holders Litig.*, Civil Action No. 10,466, 1991 WL 275766 (Del. Ch. Dec. 19, 1991) (awarding a 6.6 multiplier on $70 million recovery);

---

[6] *Merry-Go-Round* was not a class action, but an adversary proceeding against the debtor's former accountant which was prosecuted in accordance with a previously-approved contingent fee agreement. *Id.* at 330.

- *In re IDB Commc'n Group, Inc., Sec. Litig.*, No. 94-3618 (C.D. Ca1. Jan. l7,1997) (cited at 19 Class Action Reports 472-73 (1996) (awarding a 6.2 multiplier million recovery);

- *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (awarding a multiplier of 6);

- *In re RJR Nabisco, Inc. Sec Litig.*, MDL No. 818 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) (awarding a multiplier of 6); and

- *Ladewig v. Ariz. Dep't. of Revenue*, 63 P.3d 1089, 1096 (Ariz. Tax. Ct. 2003) (held that "in light of the lengthy delay in recovery and the high risks assumed by counsel, that a lodestar multiplier of 6 is appropriate.").

## Multipliers of 5 and Above

- *In re Metro Mobile CTS, Inc. S'holder Litig.*, Consol. C.A. No. 12300, 1993 Del. Ch. LEXIS 448 (Del. Ch. Aug. 18, 1993) (awarding a multiplier of 5.6);

- *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (awarding a multiplier of 5.5);

- *In re Cendant Corp. Prides Litig.*, 51 F. Supp. 2d 537 (D.N.J. 1999), *vacated and remanded*, 243 F.3d 722 (3d Cir. 2001), *on remand*, No. 98-2819 (D.N.J. June 11, 2002) (approving percentage fee that resulted in a multiplier of 5.28);

- *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H-99-4137, 2001 WL 34633373, at *10 (S.D. Fla. Dec. 19, 2001) (awarding a multiplier of 5.3);

- *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding a multiplier of 5);

- *Ramos v. Philip Morris Cos.*, 743 So. 2d 24 (Fla. 3d DCA 1999) (awarding a multiplier of 5); and

- *In re Fernald Litig.*, No. C-1-85-149, 1989 WL 267038, at *5 (S.D. Ohio Sept 29, 1989) (awarding Class Counsel the equivalent of a multiplier of 5).

## Multipliers of 4 and Above

- *In re Worldcom, Inc. Sec. Litig.*, No. 02 CIV3288(DLC), 2004 WL 2591402, at *21, (S.D.N.Y. Nov. 12, 2004) (awarding a multiplier of 4.7 1);

- *In re Xcel Energy, Inc., Sec., Deriv., & "ERISA" Litig.*, 364 F. Supp. 2d 980, 989 (D. Minn. 2005) (awarding a multiplier of 4.7);

- *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (awarding a multiplier of 4.65);

- *Willson v. New York Life Ins. Co.*, No. 94/127804, 1995 N.Y. Misc. LEXIS 652 at *94-*95 (N.Y. Sup. Ct. Nov. 8, 1995), *aff'd*, 270 Fed. Appx. 153 (3d Cir. 2008) (awarding a multiplier of 4.6; the Court notes that "other courts have awarded fees that resulted in significantly higher multiples of the lodestar.");

- *Municipal Authority of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982, 984 (M.D. Pa. 1981) (awarding a multiplier of 4.5);

- *Deloach v. Philip Morris Cos.*, No. 1:00CV01235, 2003 WL 23094907, at *16 (M.D.N.C. Dec. 19, 2003) (awarding a multiplier of 4.45);

- *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 512 (D. Del. 2003) (awarding a multiplier of 4.3);

- *Rabin v. Concord Assets Group, Inc.*, No. 89 CIV.6130, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding a multiplier of 4.4);

- *O'Brien v. Nat'l Prop. Analysts*, 88 Civ. 4153 (S.D.N.Y. July 27, 1989) (awarding a multiplier of 4.37);

- *In re Trilogy Sec. Litig.*, C-84-20617(A) (N.D. Cal. 1986) (awarding a multiplier of 4.37);

- *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (awarding a multiplier of 4.3);

- *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079, at *12 (N.D. Cal. Nov. 15, 2005) (awarding a multiplier of 4);

- *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209 (D.D.C. 2005) (executive committee received 4 multiplier);

- *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1359 (N.D. Ill. 1974) (awarding fee equal to four times counsel's hourly rate);

- *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 326-28 (N.D. Ill. 1981) (four times hourly rate awarded for lead counsel and two for other counsel); and

- *Ryan v. City of Chicago*, 654 N.E. 2d 483 (Ill. Ct. App. 1995) (approving fee award of 33% of common fund, which court stated for comparative purposes only, resulted in a multiplier of 4).

Accordingly, the fees and expenses requested here, which yields a multiplier of 2.24, is entirely reasonable.

### E. The Results Achieved by Class Counsel Provide Important Monetary and Therapeutic Benefits to Florida HMO Subscribers

Through the prosecutorial and investigative efforts of Class Counsel, a settlement has been reached with DAB establishing important monetary and therapeutic benefits to cure the harm addressed in the Complaint. "Perhaps no better indicator of the quality of representation here exists than the result obtained." *See Behrens*, 118 F.R.D. at 547. Empirical research indicates the outcome achieved is the best determinant in assessing the reasonableness a fee.[7]

In this action, Class Counsel have achieved a settlement with a substantial, ascertainable benefit, at a high degree of financial risk to themselves and without any assurance of compensation. The Settlement, when incorporated into a final judgment, will ensure that Class Members receive financial compensation and that, going forward, DAB's business practices adhere to Florida law. Based on the foregoing, Florida HMOs subscribers would not benefit from any reduction in the fee and expense request, but DAB would.

---

[7] Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 Jrl. Emp. L. Stud. 27 (March 2004).

## VI. CLASS COUNSELS' EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel should be reimbursed for their modest expenses in litigating this case. The appropriate analysis to apply in determining which expenses are compensable in a class action case is whether such costs are of the variety typically billed by attorneys to clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered) (quoted in *Texas State Teachers Ass'n v. San Antonio Indep. Sch. Dist.*, 584 F. Supp. 61, 66 (W.D. Tex. 1983); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1255 (3d Cir. 1995) (expenses are recoverable if it is customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.").

## VII. PLAINTIFF IS ENTITLED TO MODEST INCENTIVE AWARD

Finally, Class Counsel request approval of a modest incentive award to Plaintiff, whose wherewithal and commitment allowed this case and the Settlement thereof to occur, in the modest amount of $2,000. DAB does not oppose this award and will pay it, if approved, as provided by the Settlement Agreement.

"Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during

litigation." *Camp v. Progressive Corp.*, No. Civ. A. 01-2680, Civ. A. 03-2507, 2004 WL 2149079, at *8 (E.D. La. Sept. 23, 2004); *see also Carrabba v. Randalls Food Markets, Inc.*, 191 F. Supp. 2d 815, 835 (N.D. Tex. 2002) (recognizing practice of awarding incentive awards). Based on Class Counsel's experience, the amounts requested here are consistent with or below the amounts typically awarded in similar litigation. *See*, *e.g.*, *Camp*, 2004 WL 2149079, at *7 (awarding up to $10,000 to each named plaintiff as incentive awards, for a total payment of $102,000); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999), *reversed by*, *remanded by*, 570 F.3d 244 (5th Cir. 2009) (awarding named plaintiffs up to $10,000 each for participating in lawsuit); *In re Granada P'ship Sec. Litig.*, 803 F. Supp. 1236, 1247 (S.D. Tex. 1992) (granting request for incentive award of $5,000 to representative class action plaintiffs); *Purdie v. Ace Cash Express, Inc.*, No. Civ. A. 301CV1754, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (awarding the three named plaintiffs a combined incentive award of $16,665); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (awarding each of four named plaintiffs a $10,000 incentive award).

The incentive award requested is justified in light of Plaintiff's willingness to devote his time and energy to prosecuting a representative action and reasonable in consideration of the overall benefit conferred to the Class, and should be approved.

## VIII.  CONCLUSION

Ultimately, then, the circumstances underlying the prosecution of this case when examined under applicable legal standards, clearly demonstrate Class Counsel's requested fees and costs, and the requested incentive award for Plaintiff are reasonable. This case was in many respects undesirable, which in turn made it risky and difficult, and the results under the

Settlement all the more significant. The issues were complex, the legal hurdles were many and substantial, the opponent was an ably-defended company, and the time and expense demands were not insubstantial. This case was undertaken by Class Counsel on a wholly contingent basis. No client or Class member was asked to pay fees or advance costs. Yet, without any assurance of success in such uncharted legal territory, Plaintiff and Class Counsel pursued their novel claims against DAB before this Court, and obtained good monetary and therapeutic benefits to cure the harm addressed in the Complaint.

Class Counsel's efforts and results are exemplary particularly in light of the complicated nature of the issues; the time, effort and skill required to litigate this case and achieve settlement; and the actual settlement achieved. The fee requested here was the product of arm's length negotiations and only negotiated *after* relief for the Class had been assured. This Court's award of the requested fee and incentive amounts will encourage counsel and individuals to bring class actions that seek to curb the problems of balance billing HMO subscribers in Florida. Moreover, the reasonableness of the attorneys' fees and costs and incentive award requested in this Motion is not only well supported by relevant, controlling precedent, but also expert, empirical research relating to court-awarded fees and incentive awards in class cases. Accordingly, Class Counsel respectfully request that the Court approve the agreed-upon, proposed award of attorneys' fees and expenses in the total amount of $225,000, which DAB does not oppose.

DATED:  February 2, 2011

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON, *Trial Counsel*
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341


*s/ Stuart A. Davidson*
STUART A. DAVIDSON

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33433
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com

ERIC LEE
Florida Bar No. 961299
LEE & AMTZIS, P.L.
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 (fax)
Lee@leeamlaw.com

Attorneys for Plaintiff and Class Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<div style="margin-left:50%;">

*s/ Stuart A. Davidson*
Stuart A. Davidson

ROBBINS GELLER RUDMAN
 & DOWD LLP

E-mail:  sdavidson@rgrdlaw.com

</div>