# EXHIBIT "A"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| HARRY RYDER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 8:09-CV-2058-T-27TGW |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| DIVERSIFIED AMBULANCE BILLING, LLC and DIVERSIFIED AMBULANCE BILLING – SOUTHEAST, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF PROFESSOR GEOFFREY MILLER

1.  My name is Geoffrey P. Miller.  I am over eighteen years of age, I am competent to make this affidavit, and I have personal knowledge of the matters and facts recited herein.

### Scope of Retention

2.  I have been retained by Plaintiffs' counsel to analyze the requested attorneys' fee award in the above-captioned matter.

### Summary of Opinion

3.  The fee requested by counsel is reasonable and in line with fees awarded in similar cases.

### Qualifications

4.  I am the Stuyvesant P. Comfort Professor of Law at the New York University Law School.  I received an A.B. degree *magnum cum laude* from Princeton University in 1973 and a

1

J.D. degree from Columbia Law School, where I was a Stone Scholar and Editor-in-Chief of the Law Review. I served as a law clerk to Judge Carl McGowan of the United States Court of Appeals for the District of Columbia Circuit and Justice Byron R. White of the United States Supreme Court. I worked as an attorney-adviser at the Office of Legal Counsel in the United States Department of Justice from 1980-1982. After practicing civil litigation with a Washington D.C. law firm, I joined the faculty of the University of Chicago Law School in 1983, where I served as Kirkland & Ellis Professor and Associate Dean. I moved to New York University in 1995. I am a co-founder, former co-president, and board member of the Society for Empirical Legal Studies, an organization of scholars in the fields of law, economics, sociology, psychology, business, and political science whose work examines the statistical and empirical bases of legal rules.

5. I have written extensively over the years on issues relating to attorneys' fees. My empirical studies on attorneys' fees in class action cases (co-authored with Professor Theodore Eisenberg of Cornell University) have been cited by courts around the country and are the leading authority on that topic.[1]

---

[1] See In re Trans Union Corp. Privacy Litigation, --- F.3d --- (7th Cir. 2011) (Posner, J.) (relying on Eisenberg-Miller study); Allapattah Services, Inc. v. Exxon Corp., 362 F.3d 739 (11th Cir. 2004); Velez v. Novartis Pharmaceuticals Corp., 2010 WL 4877852 (S.D.N.Y. 2010); Kay Co. v. Equitable Production Co., --- F.Supp.2d ---, 2010 WL 4501572 (S.D.W.Va. 2010); In re Vioxx Products Liability Litig., No. 2:05-md-01657-EEF-DEK (E.D. La., October 19, 2010) (noting that "this Court is among the many throughout the country that have considered data compiled in [Eisenberg and Miller's] empirical studies of attorneys' fees in class action settlements"); In re Lawnmower Engine Horsepower Marketing & Sales Practices Litigation, --- F.Supp.2d ----, 2010 WL 3310264 (E.D.Wis. 2010) (characterizing the Eisenberg-Miller study as "the best indicator of what the market would pay class counsel for their services"); Klein v. O'Neal, Inc., 705 F.Supp.2d 632 (N.D.Tex. 2010); In re Marsh Erisa Litigation, 265 F.R.D. 128 (S.D.N.Y. 2010); In re MetLife Demutualization Litigation, 689 F.Supp.2d 297 (E.D.N.Y. 2010); Braud v. Transport Service Co. of Illinois, 2010 WL 3283398 (E.D.La. 2010); Fiala v. Metropolitan Life Ins. Co., Inc., 27 Misc.3d 599, 899 N.Y.S.2d 531, 2010 N.Y. Slip Op. 20071 (N.Y.Sup. 2010); In re Trans Union Corp. Privacy Litigation, 2009 WL 4799954 (N.D.Ill. 2009); Hall v. Children's Place Retail Stores, Inc., 669 F.Supp.2d 399 (S.D.N.Y. 2009); Loudermilk Services, Inc. v. Marathon Petroleum Co. LLC, 623 F.Supp.2d 713 (S.D.W.Va. 2009); In re OCA, Inc. Securities and Derivative Litigation, 2009 WL 512081 (E.D.La. 2009); In re Cardinal Health Inc. Securities Litigations, 528 F.Supp.2d 752 (S.D.Ohio 2007); Turner v. Murphy Oil USA, Inc., 472 F.Supp.2d 830 (E.D.La. 2007) ("the Court will look to Eisenberg and Miller's data sets to determine an average percentage for cases of similar magnitude"); In re Cabletron Sys. Inc. Securities Litigation, 239 F.R.D. 30 (D.N.H. 2006); In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12

6. A copy of my resume is attached as Appendix A.

Materials Reviewed

7. In preparing this Declaration I have reviewed (a) Settlement Agreement and Stipulation; (b) Plaintiff's Unopposed Motion and Incorporated Memorandum of Law For Final Approval of Class Action Settlement; (c) Plaintiff's Unopposed Motion and Incorporated Memorandum of Law For an Agreed-To Award of Attorneys' Fees and Incentive Award to Class Representative; (d) transcript of hearing, February 14, 2011. I have also reviewed applicable research papers and discussed this matter with class counsel.

The Litigation and Settlement

8. The complaint in this case alleged that Defendant Diversified Ambulance Billing had engaged in improper "balance billing" for ambulance services provided in Florida to Florida health maintenance organization ("HMO") subscribers. Defendant denied liability and asserted that the case could not be certified as a class action. Plaintiff obtained and reviewed 1,579 pages of documents pursuant to discovery. In March 2010 plaintiff moved for class certification. Thereafter the parties engaged in settlement negotiations, resulting finally in a settlement agreement on May 7, 2010.

9. Under the settlement agreement, Defendant agrees to:

(a) implement certain business practices that will directly affect the collection of payments by Defendant from Florida HMO subscribers;

(b) pay class members who file timely proof of claims an amount equal to any payment above their co-payment or deductible, plus $10.00;

(c) pay the costs of class notice;

---

Litigation, 447 F.Supp.2d 612 (E.D.La. 2006); In re Chiron Corp. Securities Litigation, 2007 WL 4249902 (N.D.Cal. 2007); In re Lupron Marketing and Sales Practices Litigation, 2005 WL 2006833 (D.Mass. 2005).

(d) pay the costs of settlement administration;

(e) pay class representative Harry Ryder an incentive award of up to $2,000, as ordered by the Court; and

(f) pay an award for class counsel fees and expenses, as ordered by the Court, in an amount not to exceed $225,000.00.

Opinion

10.  Counsel seeks fees based on the "lodestar" methodology, which calculates counsel's reasonable hours times reasonable hourly rate and then adjusts this "lodestar" by a multiplier designed to take account of special features, most importantly the risk of the case.  This methodology is appropriate given that the case involves a substantial element of relief which cannot be quantified in dollar terms.

Hourly Rates

11.  Counsel's lodestar was approximately $100,000, representing billing rates ranging from less than $300 per hour for associates to slightly more than $700 per hour for a senior partner.  These rates are reasonable in light of practices in South Florida as well as fees awarded in class action cases around the country.

12.  A recent survey conducted by the *Daily Business Review* examined billing rates for law firms in South Florida.  Susan Postlewaite, "Law Firm Billing Survey: Riding a Wave of Misfortune," *Daily Business Review*, October 11, 2010 (attached as Appendix B).  This study examined rates disclosed in court records for approximately 150 partners, associates and of counsel at 28 South Florida law firms. This study reported associate rates ranging from $190 to $400.  It found that partners are increasingly billing at $500 an hour or above.  Rates for senior

partners at $700 and above were observed at an increasing rate compared with the corresponding survey in 2009. One partner billed at $735 per hour; another billed at $785.

13. Given the trend of generally increasing fees, it is probable that the same survey conducted in 2011 would document somewhat higher billing rates than those reported for 2010.

14. Unlike attorneys whose work is limited to South Florida, plaintiffs' counsel engages in a nationwide practice of class action litigation. The market for complex class action services is the country as a whole. I can attest that the billing rates requested by counsel are in line with rates observed generally in this type of litigation.

15. Plaintiffs' attorneys in these cases regularly encounter defense counsel working at top national law firms. A *National Law Journal* survey of billing practices at the 250 largest firms, conducted in 2008, found that partner rates ranged from $550-$1,260 per hour (average $747) and associate rates ranged from $160-$920 per hour (average $456).[2] A rate of $1,000 per hour has become a benchmark for senior partners at leading national law firms.

16. One area where information is available about rates charged by attorneys at top firms is bankruptcy practice, since counsel who seek payment from the bankruptcy estate must disclose their fees. A recent survey of bankruptcy fees confirms that partner rates of $800 and above have become ubiquitous in this area of practice.[3] Many of these firms also include litigation departments whose attorneys conduct class action litigation on the defense side. Table 1 provides information on these hourly rates:

---

[2] National Law Journal. "A Nationwide Sampling of Law Firm Billing Rates," *The National Law Journal*. 8 Dec 2008, available at http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202436055916&hbxlogin=1.
[3] See Amy Kolz, "Bankruptcy Rates Top $1,000 Mark in 2008-09," 16 Dec, 2009. Law.com. 24 Oct, 2010 available at http://www.law.com/jsp/article.jsp?id=1202436371636.

Table 1:  Rates Charged by Bankruptcy Counsel

| Firm | Median Rate for U.S.-based Partners | # Partners Filing |
|------|-------------------------------------|-------------------|
| Simpson Thacher | $980 | 30 |
| Cleary Gottlieb | $960 | 47 |
| Shearman & Sterling | $950 | 17 |
| Davis Polk | $948 | 14 |
| Skadden | $945 | 38 |
| Paul Weiss | $925 | 24 |
| Cadwalader | $900 | 29 |
| Milbank | $900 | 55 |
| Weil Gotshal | $843 | 142 |
| Gibson Dunn | $840 | 29 |
| Latham & Watkins | $830 | 57 |
| White & Case | $825 | 21 |
| Paul Hastings | $810 | 46 |

Source: Amy Kolz, "Bankruptcy Rates Top $1,000 Mark in 2008-09," 16 Dec, 2009. Law.com. 24 Oct, 2010 available at http://www.law.com/jsp/article.jsp?id=1202436371636

17.  Plaintiffs' counsel Robbins Geller Rudman & Dowd LLP and Lee & Amtzis, P.L. are highly qualified and experienced attorneys whose billing rates appropriately reflect their background and experience.

18.  It is my opinion, therefore, that the billing rates reported by plaintiffs' attorneys in this case are appropriate and in line with rates charged in the community of lawyers engaged in similar practice, both in South Florida and across the country.

The Lodestar Multiplier

19.  Plaintiffs' fee request represents a multiplier of 2.24.  This multiplier is reasonable in light of fees awarded in similar cases.

20.  The principal purpose of the multiplier is to ensure that attorneys are adequately compensated for the risk they take on in class action cases.  The rates incorporated in the lodestar

6

reflect rates for hourly work in which counsel is sure to be paid. Class action litigation, however, is brought on a contingency basis: the lawyer will receive a fee only if he or she obtains a recovery. Otherwise counsel receives nothing. The present case is an example: plaintiffs' attorneys brought this case knowing that if they were unsuccessful they would receive no compensation for their time and effort.

21. If lodestar multipliers (greater than 1) were not awarded, class action attorneys would lose much of their incentive to bring these cases in the first place. If they can receive their lodestar rates for hourly work with no risk, they would hardly engage in class action litigation where the fee they expect to receive must be discounted by the chance that they will not succeed. Fewer class action cases would be brought, and many victims of wrongful conduct would be deprived of any realistic chance of redress.

22. Some critics claim that class cases represent little risk because they "always" settle. This is a myth. Class action cases do not always or even routinely settle. In fact, it appears that class action cases are more likely than other types of litigation to be dismissed or dropped. *See* Nicholas M. Pace, Stephen J. Carroll, Ingo Vogelsang & Laura Zakaras, *Insurance Class Actions in the United States* (Rand Institute for Civil Justice 2007), pp. 45-46 and table 3.15 (finding that negotiated class-wide settlements occurred in only 12 percent of closed insurance cases filed initially as class actions, and concluding that "a defendant in an insurance class action appears to have a better chance of an outcome in its favor than it would if the matter were brought on an individual basis"). Because, contrary to some popular accounts, class actions do not always or even routinely settle, plaintiffs incur substantial risk when they take on these cases.

7

23.   Plaintiffs' counsel's requested lodestar multiplier of 2.24 is within the range of reason.  Counsel's brief in support of its fee request documents many cases where multipliers higher than 2.24 have been awarded – sometimes much higher.

24.   There is also empirical data on this issue. Information on lodestar multipliers broken down by case category is found in Eisenberg and Miller's 2010 comprehensive study of eighteen years of class action settlements.  This is shown in Table 2:

Table 2: Average Multipliers by Case Category

| | | |
|---|---|---|
| Antitrust | 2.24 | 38 |
| Civil Rights | 1.99 | 11 |
| Consumer | 1.82 | 60 |
| Corporate | 1.94 | 7 |
| Employment | 1.24 | 21 |
| ERISA | 1.58 | 29 |
| Securities | 1.75 | 177 |
| Tort | 1.83 | 11 |
| Other | 2.35 | 14 |
| Total | 1.81 | 368 |

Source: Theodore Eisenberg and Geoffrey Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies 248-281 (2010).

The average multiplier for consumer cases in the Eisenberg-Miller study was 1.82.  The multiplier requested in the present case (2.24) is slightly above this figure, but not much.  It is within the range of reason when judged by cases of similar type.

The Process of Negotiation

25.   Another important fact of this case deserves to be emphasized: the process of negotiation.  I understand that the parties scrupulously avoided negotiating over fees until after reaching an agreement on the merits.  This practice of separating the negotiation of fees and merits is, in my opinion, a "best practice" of class action litigation.  If the fee discussions are deferred until after agreement on the merits, it becomes impossible for the parties to engage in an

implicit bargain under which the defendant pays less to the class in exchange for a higher attorney fee. While reputable attorneys such as counsel in the present case would not engage in such a practice, the practice of separating the negotiations eliminates any questions that might be raised on this score. By separating the negations, moreover, the parties introduce an adversarial check on the fee award. The defendant has an interest in bargaining to limit the size of the fee it will pay as part of the settlement. If, under such circumstances, a defendant agrees not to object to an award up to a certain figure, this is evidence that the fee agreed to by the parties is reasonable.

26. In the present case, where the parties followed this commendable practice, the Court can have a degree of assurance that the requested fee is within the range of reason. The Court, of course, must still engage in a rigorous scrutiny. But for reasons provided previously in this Declaration, the request is also reasonable when judged apart from the process by which it was negotiated.

Conclusion

27. Accordingly, it is my opinion that the fee request is within the range of reason as to the lodestar and the multiplier, and also when judged in light of the process by which the fee was negotiated.

Geoffrey Parsons Miller
March 12, 2011

Appendix A

# GEOFFREY P. MILLER

New York University Law School
40 Washington Square South Suite 411G
New York, New York 10012
 (212) 998-6329 (office)
(212) 995-4659 (fax)
geoffrey.miller@nyu.edu

## Work Experience

New York University Law School (1995-present)
  Stuyvesant P. Comfort Professor of Law
  Director, NYU Center for the Study of Central Banks and Financial Institutions (1994-present)
  Co-Director, NYU Center for Law, Economics and Organization (2006-present)
  Co-Founder and Co-President, Society for Empirical Legal Studies (2006-2007)
  Chair, Academic Personnel Committee (1999-2000; 2004-2006)
  Chair, Promotions and Tenure Committee (2007-2009)

University of Chicago Law School (1983-1995)
  Kirkland & Ellis Professor (1989-1995)
  Editor, Journal of Legal Studies (1989-1995)
  Director, Program in Law and Economics (1994-1995)
  Director, Legal Theory Workshop (1989-1993)
  Associate Dean (1987-1989)
  Professor of Law (1987-1989)
  Assistant Professor of Law (1983-1987)


Faculty Member, Study Center Gerzensee, Switzerland, Spring 2012 (invited)
Visiting Lecturer, University of Genoa Department of Law, Spring 2011 (invited)
Visiting Scholar, European University Institute, Florence Italy, Fall/Winter 2010
Visiting Chair on Private Actors and Globalisation, Hague Institute for the Internationalisation
       of Law, Fall/Winter 2010
Robert B. and Candace J. Haas Visiting Professor of Law, Harvard Law School,
       Fall 2009
Max Schmidheiny Guest Professor, University of St. Gallen, Switzerland
       Summer 2009
Fresco Endowed Professor of Law, University of Genoa, Italy, Summer 2008,
       Spring 2009, Summer 2010

Visiting Scholar, University of Minnesota Law School, Spring 2008
Visiting Lecturer, University of Bolzano, Italy, Summer 2007
Commerzbank Visiting Professor, Institute for Law & Finance, University of
        Frankfurt, Germany, Summer 2004, Summer 2005, Summer 2010
Visiting Professor, Columbia Law School, Fall 2001
Visiting Professor, University of Sydney, Australia, Summer 2002; Summer 2006;
        Spring 2009
Zaeslin Visiting Professor, University of Basel, Switzerland, Summer 2001, 2002, 2003,
        2004, 2005, 2007, 2008, 2009, 2010, 2011 (invited)
Visiting Scholar, CentER for Economic Research, Tilburg, Holland, Summer 1996
John M. Olin Visiting Scholar, Cornell University Law School, Summer 1992,
        Spring 1996; Winter 1997, Summer 2005, Spring 2008, Spring 2009, Spring 2010
Visiting Scholar, Bank of Japan, Spring 1995
Visiting Professor, New York University Law School, Fall 1994
Consultant, Federal Reserve Bank of Chicago, 1992-1994
Visiting Scholar, New York University Law School, Fall 1993
Simpson Grierson Butler White Visiting Professor, University of Aukland,
    New Zealand, Summer 1993

Associate, Ennis, Friedman, Bersoff & Ewing
Washington, D.C. (1982-83)

Attorney Adviser, Office of Legal Counsel
U.S. Department of Justice (1980-82)

Clerk, Hon. Byron R. White
Supreme Court of the United States (1979-80)

Clerk, Hon. Carl McGowan
U.S. Court of Appeals, District of Columbia (1978-79)

## Corporate Service

Member of the Board of Directors, State Farm Bank (2010) – board and committee service for
nontraditional thrift institution with $15 billion in assets.

## Education

Columbia Law School, J.D. (1978)
Editor-in-Chief, Columbia Law Review (1977-78)
Princeton University, A.B. *magna cum laude* (1973)

## Publications

## Books

Ways of a King: Legal and Political Ideas in the Bible (manuscript 2011)

Trust, Risk, and Moral Hazard in Financial Markets (Il Mulino, 2011)

The Origins of the Necessary and Proper Clause (with Gary Lawson, Robert Natelson, and Guy Seidman) (Cambridge University Press 2010)

The Economics of Ancient Law (editor) (Edward Elgar 2010)

Bank Mergers and Acquisitions (editor, with Yakov Amihud) (Kluwer Academic Publishers 1998)

La Banca Central en América Latina: Aspectos Económicos y Juridicos [Central Banks in Latin America and Their New Legal Structure] (in Spanish) (editor, with Ernesto Aguirre and Roberto Junguito Bonnet) (Tercer Mundo: Bogotá 1997)

Costly Policies: State Regulation and Antitrust Exemption in Insurance Markets (AEI Press 1993) (with Jonathan R. Macey)

Banking Law and Regulation, Little, Brown & Co. 1992 (with Jonathan R. Macey); Second Edition, Aspen Law & Business 1997 (with Jonathan R. Macey), Third Edition, Aspen Law & Business 2001 (with Jonathan R. Macey and Richard Scott Carnell); Fourth Edition, Aspen Law & Business 2008 (with Richard Scott Carnell and Jonathan R. Macey), under title "The Law of Banking and Financial Institutions"

Banking Law and Regulation: Statutory and Case Supplement (Little, Brown & Co. 1992; Second Edition, Aspen Law & Business, 1997) (with Jonathan R. Macey), Third Edition, Aspen Law & Business, 2000) (with Jonathan R. Macey and Richard Scott Carnell); Fourth Edition, Aspen Law & Business 2008 (with Richard Scott Carnell and Jonathan Macey)

Banking Law and Regulation: Teacher's Manual (1992; Second Edition 1997; Third Edition 2001, Fourth Edition 2008) (with Jonathan R. Macey and Richard Scott Carnell)

<u>Articles</u>

<u>Legal Ethics/Legal Profession</u>

The English vs. the American Rule on Attorneys Fees: An Empirical Study of Attorney Fee Clauses in Publicly-Held Companies' Contracts (manuscript 2010) (with Theodore Eisenberg)

Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008, 7 Journal of Empirical Legal Studies 248 (2010) (with Theodore Eisenberg)

Ethical Considerations in Class Action Practice, in Practising Law Institute, Class Action Litigation 2007: Prosecution & Defense Strategies (2007)

From Club to Market: The Evolving Role of Business Lawyers, 74 Fordham Law Review 1105
(2005)

Bad Judges, 83 Texas Law Review 431 (2004)

Attorneys' Fees in Class Action Settlements: An Empirical Study, 1 Journal of Empirical Legal
Studies 27 (2004) (with Theodore Eisenberg)

Professional Independence and the Corporate Lawyer (with William T. Allen), in Jay W. Lorsch,
Leslie Berlowitz, and Andy Zelleke, Restoring Trust in American Business 113-126 (American
Academy of Arts and Sciences 2005)

Conflicts of Interest in Class Action Litigation: An Inquiry into the Appropriate Standard, 2003
University of Chicago Legal Forum 581-630 (2003)

Payment of Expenses in Securities Class Actions: Ethical Dilemmas, Class Counsel, and
Congressional Intent, 22 Review of Litigation 557 (2003)

Ethical Considerations in Class Action Practice, in Practising Law Institute, Class Action
Litigation: Prosecution & Defense Strategies (2003)

Conflicts of Interest in Negotiation: An After-word and a Reply, 84 Iowa Law Review 1133-
1139 (1999) (with Jonathan R. Macey)

Second Opinions in Litigation, 84 Virginia Law Review 1411-1437 (1998)(with Michael
Klausner and Richard Painter)

Kaye, Scholer as Original Sin: The Lawyer's Duty of Candor and the Bar's Temptations of
Evasions and Apology, 23 Law & Social Inquiry 305-313 (1998)

An Economic Analysis of Conflict of Interest Regulation, 82 Iowa Law Review 965-1005 (1997)
(with Jonathan R. Macey), republished in Foundations of the Law and Ethics of Lawyering,
George Meredith Cohen and Susan P Koniak, editors. New York: Foundation Press (2004)

Reflections on Professional Responsibility in a Regulatory State, 63 George Washington Law
Review 1105 (1995) (with Jonathan R. Macey)

Government Lawyers' Ethics in a System of Checks and Balances, 54 University of Chicago
Law Review 1293 (1987)

Civil Procedure

A Modest Proposal for Securities Fraud Pleading After Tellabs (forthcoming 2011)

Group Litigation in the Enforcement of Tort Law, in Jennifer Arlen, ed., The Economics of Torts
(forthcoming 2011)

The Quasi-Class Action Method of Managing Multi-District Litigations: Problems and a Proposal, 63 Vanderbilt Law Review 107 (2010) (with Charles Silver)

Will Aggregate Litigation Come to Europe?, 62 Vanderbilt Law Review 177-210 (2009) (with Samuel Issacharoff)

Preliminary Judgments, 2010 University of Illinois Law Review 165 (2009)

A New Look at Judicial Impact:  Attorneys' Fees in Securities Class Actions after Goldberger v. Integrated Resources, Inc., 29 Washington University Journal of Law & Policy 5-35 (2009) (with Theodore Eisenberg and Michael Perino)

Punti cardine in tema di class action negli Stati Uniti e in Italia (Cutting-Edge Issues in U.S. and Italian Class Action Litigation), 2008 Analisi Giuridica dell'Economia 211-230 (2008)

Compensation and Deterrence in Consumer Class Actions in the United States, in Fabrizio Cafaggi and Hans W. Micklitz, eds., New Frontiers in Consumer Protection: The Interplay Between Private and Public Enforcement 263-282 (2009)

Pleading after *Tellabs*, 2009 Wisconsin Law Review 507-534 (2009)

Mandatory Arbitration for Customers But Not For Peers, 92 Judicature 118-123 (2009) (with Theodore Eisenberg and Emily Sherwin)

Arbitration's Summer Soldiers: An Empirical Study of Arbitration Clauses in Consumer and Non-Consumer Contracts, 41 University of Michigan Journal of Law Reform 871-96 (2008) (with Theodore Eisenberg and Emily Sherwin); reprinted in 7 ICFAI University Journal of Alternative Dispute Resolution (Hyderabad, India)

Reversal, Dissent, and Variability in State Supreme Courts: The Centrality of Jurisdictional Source, 89 Boston University Law Review 2009 (2009) (with Theodore Eisenberg)

All-or-Nothing Versus Proportionate Damages, 38 Journal of Legal Studies 345-382 (2009) (with Shmuel Leshem)

Judicial Review of Class Action Settlements, 1 Journal of Legal Analysis 167-205 (2008) (with Jonathan R. Macey)

Do Juries Add Value? Evidence From an Empirical Study of Jury Trial Waiver Clauses in Large Corporate Contracts, 4 Journal of Empirical Legal Studies 539 (2007) (with Theodore Eisenberg)

The Flight from Arbitration: An Empirical Study of *Ex Ante* Arbitration Clauses in Publicly-Held Companies' Contracts, 56 DePaul Law Review 335 (2007) (with Theodore Eisenberg), reprinted in 49 Corporate Practice Commentator 323 (2007)

Rethinking Certification and Notice in Opt-Out Class Actions, 74 University of Missouri Kansas City Law Review 637 (2006)

Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA Law Review 1303 (2006) (with Theodore Eisenberg)

Review of the Merits in Class Action Certification, 33 Hofstra Law Review 51 (2004)

The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues, 57 Vanderbilt Law Review 1529 (2004) (with Theodore Eisenberg)

Competing Bids in Class Action Settlements, 31 Hofstra Law Review 633-650 (2003)

On the Costs of Civil Justice, 80 University of Texas Law Review 2115 (2002)

Class Actions in the Gulf States: Empirical Analysis of a Cultural Stereotype, 74 Tulane Law Review 681 (2000)

Full Faith and Credit to Settlements in Overlapping Class Actions: A Reply to Kahan and Silberman, 73 New York University Law Review 1167-1178 (1998)

Nonpecuniary Class Action Settlements, 60 Law and Contemporary Problems 97-155 (1997) (with Lori Singer)

Class Actions, in I New Palgrave Dictionary of Economics and the Law 257-262 (Peter Newman, ed., Macmillan Press 1998)

The Legal-Economic Analysis of Comparative Civil Procedure, 45 American Journal of Comparative Law 905-19 (1997)

Overlapping Class Actions, 71 New York University Law Review 514 (1996)

Settlement of Litigation: A Critical Retrospective, in Larry Kramer, ed., Reforming the Civil Justice System 13-37 (NYU Press 1996)

Expanding on the Fifty Percent Hypothesis: A Multimodal Approach to the Selection of Cases for Litigation, 25 Journal of Legal Studies 233 (1996) (with Daniel Kessler and Thomas Meites)

A Market Approach to Tort Reform Via Rule 23, 80 Cornell Law Review 909 (1995) (with Jonathan R. Macey)

Settlement Escrows, 24 Journal of Legal Studies 87 (1994) (with Robert Gertner)

Introduction: Economic Analysis of Civil Procedure, 23 Journal of Legal Studies 303 (1994)

Auctioning Class Action and Derivative Suits: A Rejoinder, 87 Northwestern Law Review 701 (1992) (with Jonathan R. Macey)

The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform, 58 University of Chicago Law Review 1 (1991) (with Jonathan R. Macey), reprinted in Franklin A. Gevurtz, Corporate Law Anthology 186-194 (1997)

Some Thoughts on the Equilibrium Hypothesis, 69 Boston University Law Review 561 (1989)

Some Agency Problems in Settlement, 16 Journal of Legal Studies 189 (1987)

An Economic Analysis of Rule 68, 15 Journal of Legal Studies 93 (1986)

The Public Interest in Attorneys' Fees Awards for Public Interest Litigation, 47 Law and Contemporary Problems 233 (1984) (with Robert V. Percival), reprinted in University of Chicago Law School Record (1989)

Note, Aldinger v. Howard and Pendent Jurisdiction, 77 Columbia Law Review 127 (1977)

<u>Corporate, Contract and Securities Law</u>

A Modest Proposal for Fixing Delaware's Broken Duty of Care, 2010 Columbia Business Law Review 319 (2010)

Un-manifested Harm in Business-to-Business Cases, 167 Journal of Institutional and Theoretical Economics 80-93 (2011)

Process as Currency with the Courts: Judicial Scrutiny of Directors' Decisions, 1 International Journal of Corporate Governance 337-365 (2010) (with Jonathan R. Macey)

A Simple Theory of Takeover Regulation in the United States and Europe, 42 Cornell International Law Journal 301 (2009) (with Guido Ferrarini), reprinted in 55 Rivista Delle Societá 680 (2010)

Bargains Bicoastal: New Light on Contract Theory, 31 Cardozo Law Review 1475 (2010)

Flight to New York: an Empirical Analysis of Choice of Law and Forum Selection Clauses in Large Commercial Contracts, 30 Cardozo Law Review 1475 (2009) (with Theodore Eisenberg)

The Market for Contracts, 30 Cardozo Law Review 2073 (2009) (with Theodore Eisenberg)

Ex Ante Choices of Law and Forum: An Empirical Analysis of Corporate Merger Agreements, 59 Vanderbilt Law Review 1975 (2006) (with Theodore Eisenberg)

Catastrophic Failures: Enron and Beyond, 89 Cornell Law Review 423-455 (2004)

Capital Markets on the Internet: An Introduction, 5 New York University Journal of Legislation and Public Policy 1 (2001-2002)

Das Kapital: Solvency Regulation of the American Business Enterprise, in Eric Posner, ed., Chicago Lectures in Law and Economics 65-81 (2000)

Takeovers: English and American, 6 European Financial Management 533-542 (2000)

Choice of Law as a Pre-Commitment Device, in F.H. Buckley, ed., The Fall and Rise of Freedom of Contract 357-69 (Duke University Press 1998)

On the Advantages of Defined Contribution Plans, in Samuel Estreicher, ed., Proceedings of the 50th Annual Conference on Labor (Kluwer Academic Press, forthcoming 1998)

Political Structure and Corporate Governance: Some Points of Contrast Between the U.S. and the U.K., 1998 Columbia Business Law Review 51-78 (1998), reprinted in Sloan Project on Corporate Governance at Columbia Law School, Corporate Governance Today 629-648 (1998)

Finance and the Firm, 152 Journal of Institutional and Theoretical Economics [Zeitschrift fur die Gesamte Staatswissenschaft] 89-107 (1996)

Corporate Governance and Commercial Banking: A Comparative Examination of Germany, Japan and the United States, 48 Stanford Law Review 73 (1995) (with Jonathan R. Macey)

Comment on "Brokerage, Market Fragmentation, and Securities Market Regulation," in Andrew W. Lo, ed., The Industrial Organization and Regulation of the Securities Industry, University of Chicago Press (1996)

Corporate Stakeholders: A Contractual Perspective, 43 University of Toronto Law Review 401 (1993) (with Jonathan R. Macey)

The Culture of Capital: Comments on Conley and O'Barr, 71 North Carolina Law Review 201 (1992)

The Economic Efficiency of Close Corporation Law: A Comment, 70 Washington University Law Quarterly 399 (1992)

Lessons from Financial Economics: Materiality, Reliance, and the Utility of Empirical Methodology in Extending the Reach of Basic v. Levinson, 77 Virginia Law Review 1015 (1991) (with Jonathan R. Macey, Jeffrey Netter, and Mark Mitchell)

The Fraud on the Market System Revisited, 77 Virginia Law Review 999 (1991) (with Jonathan R. Macey)

Politics, Bureaucracies, and Financial Markets: Bank Entry into Commercial Paper Underwriting in the United States and Japan, 139 University of Pennsylvania Law Review 369-453 (1990) (with David Litt, Jonathan R. Macey, and Edward L. Rubin)

Good Finance, Bad Economics: An Analysis of the Fraud on the Market Theory, 42 Stanford Law Review 1059 (1990) (with Jonathan R. Macey)

Trans-Union Reconsidered, 98 Yale Law Journal 127 (1988)(with Jonathan R. Macey)

Toward an Interest Group Theory of Delaware Corporate Law, 65 Texas Law Review 469 (1987) (with Jonathan R. Macey)

Constitutional Law

The President's Power of Interpretation: Implications of a Unified Theory of Constitutional Law, 56 Law and Contemporary Problems 35 (1993)

The Unitary Executive in a Unified Theory of Constitutional Law: The Problem of Interpretation, 15 Cardozo Law Review 201 (1993)

Liberty and Constitutional Architecture: The Rights-Structure Paradigm, 16 Harvard Journal of Law & Public Policy 87 (1993)

Rights and Structure in Constitutional Theory, 8 Social Philosophy & Policy 196 (1991), reprinted in E. Frankel Paul, ed., Reassessing Civil Rights (1991)

The Appropriations Power and the Necessary and Proper Clause, 68 Washington University Law Quarterly 640 (1990) (panel)

From Compromise to Confrontation: Separation of Powers in the Reagan Era, 57 George Washington Law Review 401 (1989)

Rediscovering Economic Liberties, 41 Rutgers Law Review 773 (1989) (panel)

War Powers and the Constitution: A Middle Ground, 43 University of Miami Law Review 35 (1988) (panel)

The Debate Over Independent Agencies in Light of the Empirical Evidence, 1988 Duke Law Journal 215 (1988)

Independent Agencies, 1986 Supreme Court Review 41 (1986)

Financial Institutions

Financial Private Regulation and Enforcement (manuscript, 2010)

Intellectual Hazard and the Design of Financial Stability Regulation, in University of St. Gallen Series in Law and Economics, Peter Nobel, ed. (Zurich: Schulthess, 2010) (with Gerald Rosenfeld)

Intellectual Hazard: How Conceptual Biases in Complex Organizations Contributed to the Crisis of 2008, 33 Harvard Journal of Law & Public Policy 807 (2010) (with Gerald Rosenfeld)

Helping Law Catch Up to Markets: Applying Broker-Dealer Law to Subprime Mortgages, 34 Journal of Corporation Law 789 (2009) (with Jonathan Macey, Maureen O'Hara and Gabriel D. Rosenberg)

The Basel Committee, Global Administrative Law, and the Developing World, in Benedict Kingsbury and Richard Stewart, eds, India, the South and the Shaping of Global Administrative Law  (forthcoming, Oxford University Press India 2008) (with Michael Barr)

Comment: Credit Risk Transfer, Hedge Funds, and the Supply of Liquidity, in Peter Nobel and Marina Gets, eds., Law and Economics of Risk in Finance, University of St. Gallen Series in Law and Economics 73 (2008)

Global Administrative Law – The View from Basel, 17 European Journal of International Law 15 (2006) (with Michael Barr)

Three Myths about Central Banks, Federal Reserve Bank of Cleveland Economic Commentary (November 2002)

Central Bank Independence in Ordinary and Extraordinary Times, in Jan Kleiniman, ed., Central Bank Independence: the Economic Foundations, the Constitutional Implications, and Democratic Accountability (Kluwer Academic Press 2000) 31-51 (with Rosa Lastra)

External Review of Central Bank Decisions, in 1 International Monetary Fund,  Current Developments in Monetary and Financial Law 535-51 (1999)

Bank Mergers and American Bank Competitiveness, in Yakov Amihud & Geoffrey Miller, eds., Bank Mergers and Acquisitions 175-190 (Kluwer Academic Publishers, 1998) (with Jonathan R. Macey)

Introduction: Bank Mergers and Acquisitions, in Yakov Amihud & Geoffrey Miller, eds., Bank Mergers and Acquisitions vii-xiii (Kluwer Academic Publishers, 1998)

Deposit Insurance for Economies in Transition, in Kluwers Yearbook of International and Financial Law 103-138 (1997) and R. Lastra and H. Schiffman, eds., Bank Failures and Bank Insolvency Law in Economies in Transition 37-70 (Kluwers Academic Press 1998)

Central Bank Independence, Liberalization and Inflation in Transition Economies: An International Perspective, 49 Journal of Monetary Economics 237 (2002) (with Alex Cukierman and Bilin Neyapti)

An Interest-Group Theory of Central Bank Independence, 27 Journal of Legal Studies 433-453 (June 1998)

On the Obsolescence of Commercial Banking, 154 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 61-73 (1998)

Banking Crises in Perspective: Two Causes and One Cure, in Gerard Caprio, Jr, William C. Hunter, George G. Kaufman, and Danny M. Leipziger, eds., Preventing Banking Crises: Lessons from Recent Global Bank Failures 279-287 (Federal Reserve Bank of Chicago, 1998)

Universal Banks are Not the Answer to America's Corporate Governance "Problem": A Look at Germany, Japan, and the U.S., 9 Journal of Applied Corporate Finance 57-73 (1997)(with Jonathan R. Macey), republished in The Revolution in Corporate Finance, Joel M Stern and David H. Chew, editors, Marlden, MA: Blackwell (2003)

Cooperation, Conflict, and Convergence in Japanese Finance: Evidence from the "Jusen" Problem, 29 Law and Policy in International Business 1-78 (1998)(pre-published as Washington University School of Law, Working Paper No. 97-3-1) (with Curtis Milhaupt)

Nihon no kin'yu ni okeru jusenmondai hoteki bunsekito keizaiteki bunseki [The Jusen Problem in Japanese Finance: A Legal and Economic Analysis], 1132 Jurisuto 140-49; 1134 Jurisuto 86-92; 1136 Jurisuto 83-89 (1998) (with Curtis Milhaupt) (in Japanese)

A Regulatory Cartel Model of Decisionmaking in Japanese Finance, 4 Zeitschrift fur Japanisches Recht 18-29 (1997)(with Curtis Milhaupt)

Banco de Fondos Mutuos Para América Latina? [Mutual Fund Banking for Latin America?], in La Banca Central en América Latina: Aspectos Económicos y Juridicos [Central Banks in Latin America and Their New Legal Structure], Ernesto Aguirre, Roberto Junguito Bonnet, and Geoffrey Miller, eds. 272-280 (1997) (in Spanish)

The Role of a Central Bank in A Bubble Economy, 18 Cardozo Law Review 1053 (1996)

Decisionmaking at the Bank of Japan, 28 Law and Policy in International Business 1 (1996)

Is Deposit Insurance Inevitable? Lessons From Argentina, 16 International Review of Law and Economics 211 (1996), reprinted in Jagdeep Bandhari and Alan Sykes, eds., Economic Dimensions in International Law: Comparative and Empirical Perspectives 392-404 (Cambridge University Press, 1998)

El Papel del Banco Central en una Economia Especulativa [The Role of a Central Bank in a Speculative Economy], in Miguel Mancera Aguayo, ed., El Banco de México en la Reconstrucción Económica Nacional 137 (Centro Cultural Manuel Gómez Morin, A.C., 1996)

Comments on Rajan and James, in A. Saunders & I. Walter, eds., Universal Banking: Financial System Design Reconsidered 330-333 (Irwin & Co. 1996)

Deposit Insurance, the Regulatory Contract, and the Mismatch in the Term Structure of Banks' Assets and Liabilities, 12 Yale Journal on Regulation 1-50 (1995)(with Jonathan R. Macey), reprinted as L'Assurance Des Depots, Le Contrat Reglementaire Implicite, et la Destruction des Eschances des Actifs et Passifs Bancaires, 6 Journal des Economistes et des Etudes Humaines 531 (1995)

Double Liability of Bank Shareholders: A Look at the New Data, 28 Wake Forest Law Review 933 (1993) (with Jonathan R. Macey)

Politics of Deposit Insurance Reform: The Case of Argentina, Federal Reserve Bank of Chicago, Proceedings of a Conference on Bank Structure and Competition 473 (1993) and 1 University of Chicago Law School Roundtable 129 (1994), republished as "Políticas de Reforma de Seguro de Depósito. El Caso de la Argentina," in Revista de Derecho Bancario y de la Actividad Financiera, Año 4, Enero-diciembre 1994, No. 19/24, at 221-239 (1995) (Argentine journal)

Comment on Universal Banks and Financial Stability, 19 Brooklyn International Law Journal 197 (1993)

Kaye, Scholar, FIRREA and the Desirability of Early Closure: A View of the Kaye, Scholar Case from the Perspective of Bank Regulatory Policy, 66 University of Southern California Law Review 1115 (1993) (with Jonathan R. Macey)

Constitutional Moments, Pre-commitment, and Fundamental Reform: The Case of Argentina, 71 Washington University Law Quarterly 1061 (1993)

Legal Restrictions on Bank Consolidation: An Economic Analysis, 77 Iowa Law Review 1083 (1992)

The Community Reinvestment Act: An Economic Analysis, 79 Virginia Law Review 291 (1993) (with Jonathan R. Macey)

Drunken Sailors on a Sinking Ship? The Rehnquist Court and the Bank Failure Problem, 1993 Public Interest Law Review 83 (1993)

Comments on Calomiris, in M. Klausner & L. White, eds., Structural Change in Banking 212 (1993)

The McCarran-Ferguson Act: A Case Study of Regulatory Federalism, 68 New York University Law Review 13 (1993), republished in 7 National Insurance Law Review 521 (1995)(with Jonathan R. Macey)(study prepared originally under the auspices of the American Enterprise Institute's Project on Federalism)

Bank Failure: The Politicization of a Social Problem, 45 Stanford Law Review 289 (1992) (with Jonathan R. Macey)

Toward Enhanced Consumer Choice in Banking: Uninsured Depository Facilities as Financial Intermediaries for the 1990s, 1991 N.Y.U. Annual Survey of American Law 865 (1992) (with Jonathan R. Macey)

Nondeposit Deposits and the Future of Bank Regulation, 91 Michigan Law Review 237-273(1992) (with Jonathan R. Macey)

America's Banking System: The Origins and Future of the Current Crisis, 69 Washington University Law Quarterly 769 (1991) (with Jonathan R. Macey)

Bank Failures, Risk Monitoring, and the Market for Corporate Control (with Jonathan R. Macey), 88 Columbia Law Review 1153 (1988) (study conducted under the auspices of the Administrative Conference of the United States)

The Future of the Dual Banking System, 53 Brooklyn Law Review 1 (1987)

Public Policy Implications of Legislation Limiting the Growth of Interstate Banks, Federal Reserve Bank of Chicago, Proceedings of a Conference on Bank Structure and Competition 602 (1986)

Interstate Branching and the Constitution, 41 Business Lawyer 337 (1986)

Interstate Banking in the Court, 1985 Supreme Court Review 179 (1985)

Legal History

The Common Law Origins of the Necessary and Proper Clause, 79 George Washington University Law Review 1 (2010)

*Meinhard v. Salmon,* in Jonathan R. Macey, ed., Corporate Law Stories (2008)

The Industrial Organization of Political Production: A Case Study, 149 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 769 (1993)

Comments on Priest, 36 Journal of Law and Economics 325 (1993)

Toward "Neutral Principles" in the Law: Selections from the Oral History of Herbert Wechsler, 93 Columbia Law Review 854 (1993) (with Norman Silber)

Double Liability of Bank Shareholders: History and Implications, 27 Wake Forest Law Review 31 (1992) (with Jonathan R. Macey)

Origin of the Blue Sky Laws, 70 Texas Law Review 347 (1991) (with Jonathan R. Macey), reprinted in 34 Corporate Practice Commentator 223 (1992)

Public Choice at the Dawn of the Special Interest State: The Story of Butter and Margarine, 77
California Law Review 83 (1989)

The True Story of Carolene Products, 1987 Supreme Court Review 397 (1987), reprinted in
Michael J. Glennon, et al., eds., Constitutional Law Anthology (Anderson Publishing 1997), pp.
94-103; reprinted in J. Ely, Property Rights in American History: Reform and Regulation of
Property Rights (Garland Publishing 1997), pp. 165-197.

Interviewer, Columbia University Oral History Collection, Life of Herbert Wechsler (1980-
1982) (with Norman Silber)

Jurisprudence

The Case of the Speluncean Explorers: Contemporary Proceedings, 61 George Washington Law
Review 1798 (1993)

The End of History and the New World Order: The Triumph of Capitalism and the Competition
Between Liberalism and Democracy, 25 Cornell International Law Journal 277 (1992) (with
Jonathan R. Macey)

The Canons of Statutory Construction and Judicial Preferences, 45 Vanderbilt Law Review 647
(1992) (with Jonathan R. Macey)

Pragmatics and the Maxims of Interpretation, 1990 Wisconsin Law Review 1179 (1990)

Economic Efficiency and the Lockean Proviso, 10 Harvard Journal of Law and Public Policy
401 (1987)

Ancient Law

Logos and Narrative, NYU School of Law, Public Law Research Paper No. 10-78 (2010)

Monarchy in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-76
(2010)

Nationhood and Law in the Hebrew Bible, NYU School of Law, Public Law Research Paper No.
10-57 (2010)

Revelation and Legitimacy in the Hebrew Bible, NYU School of Law, Public Law Research
Paper No. 10-52 (2010)

The Book of Judges: The Hebrew Bible's Federalist Papers, NYU School of Law, Public Law
Research Paper No. 10-66 (2010)

Consent of the Governed in the Hebrew Bible, NYU School of Law, Public Law Research Paper
No. 10-56 (2010)

Nomadism, Dependency, Slavery and Nationhood: Comparative Politics in the Book of Exodus, NYU School of Law, Public Law Research Paper No. 10-49 (2010)

Economics of Ancient Law, in Geoffrey P. Miller, ed., The Economics of Ancient Law (Edward Elgar, forthcoming 2010)

Patriarchy: The Political Theory of Family Authority in the Book of Genesis (manuscript 2010)

The Dark Age: How the Biblical Narratives Demonstrate the Necessity for Law and Government (NYU School of Law, Public Law Research Paper No. 10-18)

Origin of Obligation: Genesis 2:4b-3:24 (NYU School of Law, Public Law Research Paper No. 09-60)

Sovereignty and Conquest in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-61 (2010)

Golden Calves, Stone Tablets, and Fundamental Law: A Political Interpretation of Exodus 32 (NYU School of Law, Public Law Research Paper No. 10-02)

A Riposte Form in the Song of Deborah, in Tikva Frymer-Kensky, Bernard Levinson and Victor Matthews, eds., Gender and Law in the Hebrew Bible and the Ancient Near East 113-27 (1998)

Foreword: The Development of Ancient Near Eastern Law, 70 Chicago-Kent Law Review 1623 (1996)

Why Ancient Law?, 70 Chicago-Kent Law Review 1465 (1995)(with James Lindgrin and Laurent Mayali)

Foreword: Land Law in Ancient Times, 71 Chicago-Kent Law Review 233 (1996)

The Song of Deborah: A Legal-Economic Analysis, 144 University of Pennsylvania Law Review 2293 (1996)

The Legal-Economic Approach to Biblical Interpretation, 150 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 755 (1994)

J as Constitutionalist: A Legal-Economic Interpretation of Exodus 17:8-16 and Related Texts, 70 Chicago-Kent Law Review 1829 (1995)

Verbal Feud in the Hebrew Bible: Judges 3:12-30 and 19-21, 55 Journal of Near Eastern Studies 105 (1995)

Contracts of Genesis, 22 Journal of Legal Studies 15-45 (1993)

Ritual and Regulation: A Legal-Economic Analysis of Selected Biblical Texts, 22 Journal of
Legal Studies 477 (1993)

<u>Law and Society</u>

Parental Bonding and the Design of Child Support Obligations, in William S. Comanor, ed., The
Law and Economics of Child Support Payments 210-240 (Edward Elgar 2004)

The Legal Function of Ritual, 80 Chicago-Kent Law Review 1181 (2005)

Handicapped Parking, 29 Hofstra Law Review 81 (2000) (with Lori S. Singer)

Custody and Couvade: The Importance of Paternal Bonding in the Law of Family Relations, 33
Indiana Law Review 691 (2000)

Norm Enforcement in the Public Sphere: The Case of Handicapped Parking, 71 George
Washington Law Review 895-933 (2004)

Norms and Interests, 32 Hofstra Law Review 637 (2003)

Female Genital Mutilation: A Cultural-Legal Analysis (manuscript)

Circumcision: A Legal-Cultural Analysis, 9 Virginia Journal of Social Policy and the Law 498-
585 (2002), pre-published as New York University Public Law and Legal Theory Working Paper
Series, Working Paper 5 (2000)

Law, Pollution, and the Management of Social Anxiety, 7 Michigan Women's Law Journal 221-
289 (2001)

<u>Other</u>:

Richard Posner, 61 N.Y.U. Annual Survey of American Law 13 (2004)

Introduction: The Law and Economics of Risk, 19 Journal of Legal Studies 531 (1990) (with
Richard A. Epstein)

Law School Curriculum: A Reply to Kennedy, 14 Seton Hall Law Review 1077 (1984) (under
pen name of Chris Langdell)

<u>Book Reviews</u>

Defusing the Banks' Financial Time Bomb, BusinessWeek (Mar. 11, 2010) (review of Robert
Pozen, Too Big to Save?  How to Fix the U.S. Financial System

Love & Joy: Law, Language and Religion in Ancient Israel, by Yochanan Muffs, 58 Journal of
Near Eastern Studies 144-45 (1999)

Jesus and the Jews: The Pharisaic Tradition in John; The Trial Of Jesus; Jesus And The Law, by Alan Watson, 1 Edinburgh Law Review 273 (1997)

No Contest: Corporate Lawyers and the Perversion of Justice in America, by Ralph Nader and Wesley J. Smith, Washington Post (October 13, 1996)

The Rise and Fall of the Classical Corporation: Hovenkamp's Enterprise and American Law: 1836-1937, 59 University of Chicago Law Review 1677 (1993)

Property Rights and the Constitution: A Review of James W. Ely, Jr.'s The Guardian of Every Other Right, 37 American Journal of Legal History 378 (1993)

Anatomy of A Disaster: Why Bank Regulation Failed, 86 Northwestern University Law Review 742 (1992)

The Glittering Eye of Law, 84 Michigan Law Review 1901 (1986)

A Rhetoric of Law, 52 University of Chicago Law Review 247 (1985)

## Major Lectures

Trust, Risk, and Moral Hazard in Financial Markets (University of Genoa, Fresco Chair Lectures in Law and Finance, June 2010)

A Simple Theory of Takeover Regulation in the United States and Europe; Intellectual Hazard (Commerzebank Lectures, University of Frankfurt, May 2010)

The European Union's Takeover Directive and Its Implementation in Italy (University of Rome III, 2008)

Catastrophic Financial Failures: Enron, HIH and More (Ross Parsons Lecture, Sydney, Australia, 2002)

Das Kapital: Solvency Regulation of the American Business Enterprise (Coase Lecture, University of Chicago Law School, 1993)

Banking in the Theory of Finance; The Simple Economics of Litigation and Settlement; The Economic Structure of Corporation Law (University of Auckland, New Zealand, 1993)

## Journal Referee Reports

American Law and Economics Review
Journal of Legal Studies
Journal of Law, Economics and Organization
Review of Law and Economics

Conferences Organized

Judicial Dialogue on Mass Litigation, Florence Italy, October 15-16, 2010 (co-organizer of conference co-sponsored by NYU Law School, the American Law Institute, and the European University Institute)

Finlawmetrics 2010: Central Banking, Regulation & Supervision after the Financial Crisis (co-sponsor and member of steering committee)

Finlawmetrics 2009: After The Big Bang:  Reshaping Central Banking, Regulation and Supervision (Milan, Italy, Spring 2009) (co-sponsor and member of steering committee)

NYU Global Economic Policy Forum 2009: The Future of Regulation and Capital Markets (November 5, 2009) (co-organized with Professor Alan Rechtschaffen and with the NYU Law School Alumni Association)

Third Annual Conference on Empirical Legal Studies (Cornell University, Ithaca, New York, Fall 2008) (co-organizer)

NYU Global Economic Policy Forum (April 14, 2007).  Major conference on economic policy. Keynote address by Jean Claude Trichet, President of the European Central Bank; presentations by Tevi Troy, Deputy Secretary of the Department of Health and Human Services; Kevin Warsh, Member of the Board of Governors of the Federal Reserve System; and Donald B. Marron, Jr., Senior Economic Advisor, President's Council of Economic Advisors.  Co-organized with Professor Alan Rechtschaffen.

Second Annual Conference on Empirical Legal Studies (New York, New York, November 10-11, 2007).  Major conference (425 participants) exploring all aspects of the empirical study of law.  Co-organized with Jennifer Arlen, Bernard Black, Theodore Eisenberg and Michael Heise.

NYU Global Economic Policy Forum (April 11, 2007).  Major conference on economic policy. Keynote address by Ben S. Bernanke, Chairman of the Board of Governors of the Federal Reserve System; presentations by Stanley Druckenmiller, Founder of Dusquesne Capital, Tevi Troy, Domestic Policy Advisor for President George W. Bush, and Jeffrey Rosen, Vice Chair of Lazard.  Co-organized with Professor Alan Rechtschaffen.

First Annual Conference on Empirical Legal Studies (Austin, Texas, October 2006).  Major conference exploring all aspects of the empirical study of law.  Co-organized with Jennifer Arlen, Bernard Black, Theodore Eisenberg and Michael Heise.

Conference on Legal Aspects of the International Activities of Central Banks, Lima Peru, October 1997.  This conference, co-sponsored by the central bank of Peru, brought together leaders in the legal and economic issues facing central banks in the management of their external reserves.

27

Conference on the Governance of Institutional Investors (New York, New York, February 14, 1997). This conference, sponsored by the NYU Stern School of Business Salomon Center in association with the New York University Law School Center for the Study of Central Banks, brought together top executives, attorneys, scholars and others interested in the management and organization, both economic and legal, of the nation's large institutional investors, including its mutual fund industry.

Conference on Bank Mergers and Acquisitions (New York, New York, October 11, 1996). This conference, sponsored by the NYU Stern School of Business Salomon Center in association with the New York University Law School's Center for the Study of Central Banks, brought together leading academics, lawyers, and investment bankers to discuss some of the broader implications of bank mergers and acquisitions. Co-organizer of this conference was Professor Yakov Amihud of the Stern School's Finance Department.

Conference in Central Banks in Latin America (Bogota, Colombia, February, 1996). This conference, co-sponsored by the central bank of Colombia with technical assistance from the Legal Affairs Department of the International Monetary Fund, brought together leaders of Latin American central banks, the international financial community, and scholars from a variety of disciplines, to discuss issues related to the independence of central banks and economic development.

Conference on Central Banks in Asia (Shanghai, China, October, 1995). This conference, co-sponsored with KPMG-Peat Marwick, brought together leaders from commercial banks, investment banks, and industrial firms, as well as central bankers, to discuss Asian central banks to address issues such as the proposed law granting a degree of independence to the central bank of China.

Conference on Ancient Law (Berkeley, California, March 1995). This conference, organized with Professors James Lindgren of Chicago-Kent Law School and Laurent Mayali of the University of California at Berkeley Law School, brought together important figures from a variety of disciplines interested in Ancient Law. The proceedings are being published as two special issues of the Chicago-Kent Law Review, and as a book published by the Robbins Collection, Berkeley, California.

Conference on Central Banks in Eastern Europe and the Newly Independent States (Chicago, Illinois, April 1994). This conference brought together the Prime Minister of Estonia, three present or former Ministers of Finance of Eastern European states (including Boris Fyoderov, former Finance Minister of the Russian Republic), the heads of the central banks of eleven nations in Eastern Europe and the Newly Independent States, together with a wide variety of highly-placed officials from these countries and from the west, to discuss issues related to the independence of central banks and economic development.

<u>Professional Memberships and Positions</u>

New York State Bar
District of Columbia Bar

American Bar Association
American Law Institute (1988-1996)
Member, Paolo Baffi Centre Scientific Advisory Board, Milan, Italy (2008- present)
Member, International Academic Council, University of St. Gallen,
    Switzerland (2004-present)
Chairman, Section on Business Associations, American Association of Law
    Schools (1995)
Member of the Board of Directors, American Law and Economics Association
    (1995-1998)
Member of the Foreign Advisory Committee, Latin American Law and
    Economics Association (1995-2000)
Member of the Foreign Advisory Board, Universitad Tocurato Di Tella School of Law,
    Buenos Aires, Argentina (1992-1999)
Member of the Editorial Board, Supreme Court Economic Review
Member of the Editorial Board, The Independent Review
Member of the Advisory Board, Yearbook of International Financial and
    Economic Law
Member of the Advisory Board, University of Hong Kong Faculty of Law Asian Institute
    of International Financial Law (2001-present)
Member of the Advisory Board, LSN Comparative Law Abstracts

Courses

Legal Profession (1985-93; 1996-98; 2003-2007)
The Crisis of 2008 (2009, 2010)
Reading Class: Restructuring Finance (2009)
Property (1986-87)
Corporations (1985-88; 1991-93; 1997-2000; 2005; 2008)
Seminar on Separation of Powers (1985, 1987)
Civil Procedure (1983-84; 2004-2005)
1. Federal Regulation of Banking (1983, 1989-93; 1995-97; 2003, 2006-2010)
Land Development (1984-85)
Securities Law (1990-91)
Workshop in Legal Theory (1989-91)
Seminar on Financial Institutions (1992-93 (with Merton Miller); 1996-97)
Ethics in Class Action Practice (Continuing Legal Education Seminar 2002-2005)
Law and Economics (University of Basel, Switzerland 2005, 2007, 2008)
Advanced Seminar on Law and Economics (University of Genoa, Italy 2008)
Banking and the Financial Crisis (University of Genoa, Italy 2009)
Trust, Risk, and Moral Hazard in Financial Markets (University of Genoa, Italy, 2010)
International Banking (University of Sydney, Australia, 2002, 2006)
Introduction to Banking Law (University of Basel, Switzerland 2001, 2002, 2003, 2004, 2009,
2010 (invited))
Banking in the Theory of Finance (University of Frankfurt, Germany 2004, 2005)
Banking Regulation in Crisis (University of Frankfurt, Germany, 2010)

## Litigation and Alternative Dispute Resolution

Brief and Reply Brief for Plaintiff-Appellant, <u>Glancy v. Taubman Centers, Inc</u>. No. 03-1609 (6th Cir. 2003).

Amicus Brief for American Bankers Association, et al., <u>In Re: Visa Check/Mastermoney Antitrust Litigation</u>, 280 F.3d 124 (2d Cir. 2001) (of counsel)

Briefed and argued <u>Moran v. Household Finance Corp</u>. (the "Poison Pill" case) in the Supreme Court of Delaware (1985)

Briefed cases in the U.S. Supreme Court, U.S. Court of Appeals, U.S. District Courts, and state trial and appellate courts.  Conducted depositions and other pretrial discovery.  (1982-1983)

Briefed and argued <u>Hodges v. Metts</u>, 676 F.2d 1133 (6th Cir. 1982), on behalf of the United States.

Conducted trial of <u>American Psychological Association v. Birch Tree Press, et al</u>. (U.S. District Court, Washington, D.C. 1983).

<u>Deposit Insurance for Thailand</u>.  Prepared a draft deposit insurance law for Thailand, at the request of the International Monetary Fund (1999)

<u>Schatz v. Blanchard</u>.  Neutral arbitrator in a commercial arbitration (2000)

## Expert Witness Testimony (past five years)

<u>Lasker v. Kansas (North Fork Bancorporation Litigation)</u>, Index No. 06/103557, Supreme Court of the State of New York, County of New York (2007) (affidavit on fees)

<u>John Hancock Life Insurance Co. v. Goldman, Sachs & Co.</u>, No. 01-10729-RWZ, United States District Court, District of Massachusetts (2007) (declaration on fees)

<u>Comes v. Microsoft Corp.</u>, No. CL8211, Iowa District Court for Polk County (2007) (affidavit on merits relief and affidavit on fees)

<u>Figueroa v. Sharper Image Co</u>., Case No.: 05-21251, United States District Court, Southern District of Florida (2007) (declaration and testimony on coupon relief)

<u>Love v. Blue Cross & Blue Shield Association, et al.</u>, No. 03-21296-CIV-MORENO/SIMONTON, United States District Court, Southern District of Florida (2007) (declaration in opposition to settlement)

<u>Feuerabend v. UST, Inc.</u>, Case No. 02-CV-7124, Wisconsin Circuit Court for Milwaukee County (2007) (affidavit on fees and settlement; testimony at fairness hearing)

White v. Experian Information Solutions, Inc., Case No. 05-cv-1070, United States District Court for the Central District of California (2009) (declaration on fairness of settlement and fee award)

In re Trans Union Corp. Privacy Litigation, MDL Docket No. 1350, United States District Court for the Eastern District of Illinois (2008) (declaration on certification)

Hoffman v. American Express, Case No. 2001-022881, Superior Court for the State of California, Alameda County (2008) (deposition on claim preclusion issue)

In re Pet Foods Products Liability Litigation, MDL Docket No. 1850, Civil Action No. 07-2867 (NLH), United States District Court for the District of New Jersey (2008) (declaration on attorneys' fees)

Hensley v. Computer Sciences Corp., No. CV-2005-59-3, Circuit Court of Miller County, Arkansas (2008) (affidavit and deposition on certification)

EM Ltd. and NML Capital, Ltd. v. The Republic of Argentina and Banco de La Nación Argentina, No. 08 Civ 7974 (TPG), United States District Court for the Southern District of New York (declaration and responsive declaration on whether a state-owned financial institution is an alter-ego of the government) (2009); second supplemental declaration (2010)

Tucker v. Scrushy, et al., Nos. CIV-02-5212, CV 03-3522, CV 03-2023, CV 03-2420, CV 98-6592, Circuit Court of Jefferson County, Alabama, 2008 (affidavit on fees) (2009)

In Re: 2007 Wildfire Class Litigation, Master Case No. 2008-00093086, Superior Court of California, County of San Diego (2009) (affidavit and deposition on certification)

In re: Columbia Hospital for Women Medical Center, Inc., Case No. 09-00010 (Teel, J.), United States Bankruptcy Court for the District of Columbia (2009) (declaration on fees)

In re Vioxx Products Liability Litigation, Civil Action No. 2:05-MD-01657-EEF-DEK, United States District Court, Eastern District of Louisiana (2009) (affidavit on fee-capping order)

Chivers v. State Farm Fire & Casualty Co., NO.: CV-2004-294-3, Circuit Court of Miller County, Arkansas (2008) (affidavit on certification)

State of Missouri v. SBC Communications, Inc., No. No. 044-02645, Circuit Court of the City of St. Louis, Missouri (2009) (affidavit on fees)

Alexander v. Nationwide Mutual Insurance Co., No. CV-2009-120-3, Circuit Court of Miller County, Arkansas (2009) (affidavit on fees)

Peterman v. North American Company for Life and Health Insurance, Case No. BC357194, Superior Court of the State of California, County of Los Angeles (2009) (declaration on fees)

Holman v. Student Loan Xpress, Inc., Case No. 8:08-cv-00305-SDM-MAP (Middle District of Florida, Tampa Division) (2009) (declaration on fees)

Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase, No. 09-00686 (Southern District of New York) (2010) (declaration on class certification)

Polion v. Wal-Mart Stores, Inc., No. 01-03645 (Superior Court of Massachusetts, Commonwealth of Massachusetts) (2010) (declaration on fees; supplemental declaration on fees and motion to strike counsel)

In re MoneyGram International, Inc. Securities Litigation, No. 08-883 (DSD/JJG), United States District Court, District of Minnesota (2010) (declaration on fees)

Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A., No. 09-cv-00686 (SAS) (DF), United States District Court for the Southern District of New York (2010) (declaration and deposition on certification)

Coffey v. Freeport-McMoran Copper & Gold, Inc., No. CJ-2008-68, District Court of Kay County, State of Oklahoma (2010) (affidavit on certification)

In Re Puerto Rican Cabotage Antitrust Litigation MDL Docket No. 3:08-md-1960 (DRD), United States District Court for the District of Puerto Rico (2010) (declaration on fees)

In re XTO Energy Shareholder Class Action Litigation, No. 352-242403-09, District Court of Tarrant County, Texas, 352nd Judicial District (2010) (affidavit on fees)

The Board of Trustees of the Southern California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon, Civil Action No. 09-Cv-06273, Southern District of New York (2011) (declaration on certification)

Iorio v. Asset Marketing Systems, Inc., Case No.: 05-CV-0633-JLS (CAB), Southern District of California (2011) (declaration in fees)

Villaflor v. Equifax Information Services, LLC, Case No.: 3:09-cv-00329-MMC, Northern District of California (2011) (declaration on fees)

Other Activities

Member, Board of Directors, American Law and Economics Association (1996-1999)

Member, Board of Advisors, The Independent Review (1996-present)

Member, Board of Advisors, Asian Institute of International Financial Law (2001-present)

Member, Editorial Advisory Board, Supreme Court Economic Review (1995-present)

Member, Editorial Advisory Board, The Brookings-Wharton Papers on Financial Policy (1997-present)

President, Section on Financial Institutions and Consumer Financial Services, American Association of Law Schools (1999)

President, Section on Business Associations, American Association of Law Schools (1995)

Member, Board of Contributors, American Bar Association Preview of Supreme Court Cases (1985-1993)

Consultant, Administrative Conference of the United States (1988-89; 1991-1992)

Board of Directors and Volunteer Listener, D.C. Hotline (1980-83)

<u>Awards</u>

1992 Paul M. Bator Award for Excellence in Teaching, Scholarship and Public Service, from the Federalist Society for Law and Public Policy Studies

<u>Languages</u>

Reading knowledge of Spanish, French, and Italian.

<u>Personal</u>

Born October 17, 1950

Children Jason (b. 1986) and Forrest (b. 1987).

<u>Shorter Works</u>

Defusing The Banks' Financial Time Bomb: Without Tough Reforms, Writes Robert Pozen, We'll Probably Face An Ugly Repeat of Recent History (Business Week, March 11, 2010)

Why Interstate Banking is in the National Interest, Testimony Before the Subcommittee on Financial Institutions Supervision, Regulation and Deposit Insurance of the House Committee on Banking, Housing and Urban Affairs (September 29, 1993)

Challenging the Concept of the Common Law as a Closed System, Columbia Law School Report, Autumn, 1993 (with Norman Silber)

The Insurance Industry's Antitrust Exemption: A Longstanding Tradition Faces its Greatest
Challenge, 1992-93 ABA Preview of Supreme Court Cases 198 (1993)

Shootout at the Escheat Corral, 1992-93 ABA Preview of Supreme Court Cases (1993)

Choices and Chances for Consumers, Legal Times, Oct. 12, 1992, at 29-30.

Impeachment Procedures: An Unexplored Territory in the Separation of Powers, 1992-93 ABA
Preview of Supreme Court Cases 39 (1992)

An (Ex)changing of the Guard, 21 Journal of Legal Studies iii (1992)

Revisiting the Contingency Factor in Fee-Shifting Awards, 1991-92 ABA Preview of Supreme
Court Cases 327 (1992)

The Foreign Sovereign Immunities Act and the Market for Public International Debt, 1991-92
ABA Preview of Supreme Court Cases 307 (1992)

Return of the Tenth Amendment?: Federal Control and State Autonomy over Low Level
Radioactive Wastes, 1991-92 ABA Preview of Supreme Court Cases 284 (1992)

What are the Limits on Congressional Power to Influence Pending Cases?, 1991-92 ABA
Preview of Supreme Court Cases 158 (1991)

RICO Standing for Securities Fraud: Does the Purchaser-Seller Rule of Rule 10b-5 Apply?,
1991-92 ABA Preview of Supreme Court Cases 155 (1991)

Banking and Investment: Introduction to UPA Index and Microfiche Collection (University
Publications of America 1991)

Source of Strength in the Court: Can Bank Holding Companies be Required to Support Failing
Subsidiary Banks?, 1991-92 ABA Preview of Supreme Court Cases 42 (1991)

Source of Strength: A Source of Trouble, Legal Times, September 30, 1991 (Special
Supplement, pp. 22-25)

The Once and Future American Banking Industry, The American Enterprise (with Jonathan R.
Macey)(1991)

The Former Stockholder as Plaintiff in Short-Swing Trading Cases, 1990-91 ABA Preview of
Supreme Court Cases (1991)

Disposing of Demand Excuse in Derivative Litigation, 1990-91 ABA Preview of Supreme Court
Cases (1991)

Up in the Air: Can Congress Require States to Appoint Members of Congress to State Agencies?, 1990-91 ABA Preview of Supreme Court Cases 294 (1991)

The Statute of Limitations under Rule 10b-5, 1990-91 ABA Preview of Supreme Court Cases (1991)

Tort Claims Against Federal Banking Agencies: New Hope For Shareholders and Officers of Failed Depository Institutions?, 1990-91 ABA Preview of Supreme Court Cases 94 (1991)

Punitive Damages Redux: If the Eighth Amendment Doesn't Apply, What About the Due Process Clause?, 1990-91 ABA Preview of Supreme Court Cases 47 (1990)

Quandaries of Causation: Proxy Solicitation in Freeze-Out Mergers, 1990-91 ABA Preview of Supreme Court Cases 57 (1990)

Racial Statesmanship, Legal Times S31 (July 23, 1990)

Eurodollars, Sovereign Risk, and the Liability of U.S. Banks for Deposits in Foreign Branches, 1989-90 ABA Preview of Supreme Court Cases 281 (1990)

When is a Note a Note?, 1989-90 ABA Preview of Supreme Court Cases 18 (1990)

Interstate Banking and the Commerce Clause, 1989-90 ABA Preview of Supreme Court Cases 168 (1990)

Federal Courts, Municipalities, and the Contempt Power, 1989-90 ABA Preview of Supreme Court Cases 37 (1989)

Shoe Could Still Drop on Issue of Punitive Damages, National Law Journal (August 21, 1989)

Punitive Damages and the Constitution, 1988-89 ABA Preview of Supreme Court Cases 391 (1989)

States, Bankruptcy and the Eleventh Amendment, 1988-89 ABA Preview of Supreme Court Cases 412 (1989)

Stockholders, Arbitration, and the Securities Act of 1933, 1988-89 ABA Preview of Supreme Court Cases 383 (1989)

Appropriations Riders, Nondisclosure Agreements, and the Separation of Powers, 1988-89 ABA Preview of Supreme Court Cases 375 (1989)

Judicial Appointments and the ABA: Business as Usual or Brand New World?, 1988-89 ABA Preview of Supreme Court Cases 379 (1989)

S & L Receiverships, State Law, and the Federal Courts, 1988-89 ABA Preview of Supreme Court Cases 255 (1989)

The Non-delegation Doctrine in Taxation: A Different Constitutional Calculus?, 1988-89 ABA Preview of Supreme Court Cases 26l (1989)

Bankruptcy, Tax Liens, and Post-Petition Interest, 1988-89 ABA Preview of Supreme Court Cases (1989)

Federal Courts, State Taxes: A Vexing Dilemma For the Enforcement of Civil Rights in a Federal System, 1989-90 ABA Preview of Supreme Court Cases 95 (1988)

Separation of Powers and the Sentencing Commission, 1988-89 ABA Preview of Supreme Court Cases 23 (1988)

Administering the Savings and Loan Crisis: New Problems for the FSLIC, 1988-89 ABA Preview of Supreme Court Cases (1988)

Federal Procurement and the Separation of Powers, 1988-89 ABA Preview of Supreme Court Cases 26 (1988)

Thinking About a Career in Law, 1988-89 Talbot's Student Planning Book 32 (1988)

Carl McGowan: A Great Judge Remembered, 56 George Washington Law Review 697 (1988)

Separation of Powers: The Independent Counsel Case Tests the Limits, 1987-88 ABA Preview of Supreme Court Cases 390 (1988)

Decisionmaking in Collegial Bodies, Judicature, April/May 1988

The FDIC, Bank Officers and the Due Process Clause, 1987-88 ABA Preview of Supreme Court Cases 326 (1988)

Farm Foreclosures in Bankruptcy, 1987-88 ABA Preview of Supreme Court Cases l99 (1988)

Equal Access to Justice and Government Litigation, 1987-88 ABA Preview of Supreme Court Cases 160 (1988)

The Time Value of Money in Bankruptcy Cases, 1987-88 ABA Preview of Supreme Court Cases 116 (1987)

Getting the Fee First?: Attorneys and the SSI Program 1987-88 ABA Preview of Supreme Court Cases 118 (1987)

The Farmer and the FDIC, 1987-88 ABA Preview of Supreme Court Cases 48 (1987)

Testing the Limits of Securities Fraud: Financial Gossip in the Court, 1987-88 ABA Preview of Supreme Court Cases 26 (1987)

Checks and Balances in the Twenty-First Century, 33 University of Chicago Law School Record 7 (1987)

Separation of Powers May Become Focus Over NSC, Legal Times, Dec. 15, 1986, at 15

If a Bank is a Broker, is a Brokerage a Branch? 1986-87 ABA Preview of Supreme Court Cases 65 (1986)

Attorney's Fees in the Supreme Court, American Bar Association Journal 40 (November, 1986)

The Contingency Factor in Attorney's Fees Reconsidered, 1986-87 ABA Preview of Supreme Court Cases 20 (1986)

Restitution and Bankruptcy in a Federal System, 1986-87 ABA Preview of Supreme Court Cases (1986)

Don't Limit Contingent Fees, Chicago Tribune, June 11, 1986

The Budget and the Separation of Powers: Gramm-Rudman in the Court, 1985-86 ABA Previews of Supreme Court Cases 359 (1986)

Keeping Attorneys Fees in Proportion, 1985-86 ABA Preview of Supreme Court Cases 325 (1986)

Must the Federal Government Pay Interest on Attorneys Fees Awards?, 1985-86 ABA Preview of Supreme Court Cases 241 (1986)

The Contingency Factor in Attorneys Fees Awards, 1985-86 ABA Preview of Supreme Court Cases 243 (1986)

The FCC as Cop: Forcing State Public Service Commissions to Obey Federal Agency Orders, 1985-86 ABA Preview of Supreme Court Cases 191 (1986)

Preemption, Public Utilities, and Power Over Telephone Rate-Setting, 1985-86 ABA Preview of Supreme Court Cases 187 (1986)

A Bank is a Bank is a Bank -- or is it?, 1985-86 ABA Preview of Supreme Court Cases 67 (1985)

Settlement Offers Conditioned on Waiver of Attorneys' Fees: A Legal and Ethical Dilemma Confronts the Court, 1985-86 ABA Preview of Supreme Court Cases 55 (1985)

Bankruptcy and the Environment: The Case of Hazardous Wastes, 1985-86 ABA Preview of Supreme Court Cases 25 (1985)

A Different Approach to Interstate Banking, American Banker (August 8, 1985)

The SEC as Censor: Is Banning an Investment Advice Newsletter a Prior Restraint of the Press?, 1984-85 ABA Preview of Supreme Court Cases 243 (1985)

Enforcing Federal Rights in State Courts, 1984-85 ABA Preview of Supreme Court Cases 277 (1985)

Interstate Banking and the Constitution, 1984-85 ABA Preview of Supreme Court Cases 364 (1985)

The "Sale of Business" Doctrine in the Supreme Court, 1984-85 ABA Preview of Supreme Court Cases 344 (1985)

Sale of Business Revisited: Does the Doctrine Apply to Partial Sales of Corporate Control, 1984-85 ABA Preview of Supreme Court Cases 347 (1985)

Six Cases Shape Business Law, American Bar Association Journal 124 (Jan. 1985)

Offers of Settlement in Civil Rights Cases Pose Attorneys' Fees Question, 1984-85 ABA Preview of Supreme Court Cases 105 (1984)

Using Bankruptcy to Avoid Liability for Cleaning up Toxic Wastes, 1984-85 ABA Preview of Supreme Court Cases 36 (1984)

A Judicial Footnote Cemented the New Deal, Wall Street Journal, September 13, 1984

May Bank Holding Companies Provide Discount Brokerage Savings?, 1984-85 ABA Preview of Supreme Court Cases 575 (1984)

Blum v. Stenson: Fundamental Questions About Attorneys' Fees Awards to Public Interest Lawyers, 1984-85 ABA Preview of Supreme Court Cases 301 (1984)

Myths on the Midway, 30 Chicago Law School Record 13 (1984)

Smith v. Robinson: Another Step Towards Solving the Attorneys' Fees Puzzle? 1983-84 ABA Preview of Supreme Court Cases 437 (1984)

Securities Industry Association v. Board of Governors: Can Banks Distribute Commercial Paper? 1983-84 ABA Preview of Supreme Court Cases 425 (1984)

The "7-Eleven" Case: Arbitration v. Litigation in a Federal System, 1983-84 ABA Preview of Supreme Court Cases 161 (1983)

The Bildisco Case:  Reconciling Federal Bankruptcy and Labor Policies, 1983-84 ABA Preview of Supreme Court Cases 169 (1983)

The "Daily Income Fund" Case:  What Role Should a Mutual Fund's Board of Directors Play in Disputes over Investment Advisor Fees, 1983-84 ABA Preview of Supreme Court Cases 107 (1983)

Pulliam v. Allen:  Should State Judges who Act Unconstitutionally Pay the Plaintiff's Attorneys' Fees?, 1983-84 ABA Preview of Supreme Court Cases 115 (1983)

"Shortsighted" Bill Proposes D.C. Court Divestiture, Legal Time of Washington, August 16, 1982

The Tax Bill May Be Unconstitutional, Baltimore Sun, August 16, 1982 (with Donald N. Bersoff)

Appendix B

Copyright 2010. ALM Media Properties, LLC. All rights reserved. Daily Business Review
Page printed from: Daily Business Review

# Law Firm Billing Survey: Riding a wave of misfortune

Susan Postlewaite Special to the Review
10-11-2010

South Florida law firms boosted rates on a gradual curve upward this year, helped along by a robust real estate, litigation and bankruptcy market. Although some firms kept rates flat, a survey of billing rates found $25-an-hour rate hikes cropped up frequently, and at least a handful of high-profile law firms with big cases reeled in big fees while hiking rates in the 5 percent to 15 percent range for select partners and associates. See the Lawyer Compensation charts.

The survey, which is not comprehensive, collected rates disclosed in court records for about 150 partners, associates and of counsel at 28 law firms. It showed partners increasingly billing $500 an hour, with a few senior partners billing more than $600. The $700 hourly rate appeared more often than it did in the 2009 survey, but no rates approached the $1,000 benchmark that has surfaced in New York and a few other major markets. The lowest hourly partner rate came in at $325 before discounts. Associate hourly rates ranged from $190 to $400.

Lawyers interviewed about their rates cautioned that hourly rates in court filings are not the whole story because firms use alternative forms of billing. Dean Colson, a partner at Colson Hicks Eidson in Coral Gables whose top partners broke the $700 barrier this year, said his firm is doing a lot of work using hybrid rate structures such as a reduced hourly rate with a contingency percentage.

"Some cases lend themselves better to that than others — if you believe in your case, you're better off taking the risk," he said. "There are a number of clients who don't want to pay a very high rate for expensive litigation. I don't know that for a fact, but you've got to believe it's true."

In a statement, Greenberg Traurig executive chairman Cesar Alvarez noted the firm also uses alternative billing arrangements. "Hourly rates do not tell the full picture," he said. "The business model for the legal industry" has changed due to "clients, technology and market conditions. Our goal is to be a leader in this transition."

On the other hand, Becker Poliakoff managing partner Alan Becker said his firm kept most of its hourly rates flat for 2010, and he expects most rates to stay level again in 2011 except for "individual attorneys based on experience level may increase slightly." Becker said the firm dropped rates for some of its high-volume services such as foreclosures for condo associations dealing with assessment liens. "We do tens of thousands of them. Even though we lowered rates for that type of foreclosure, our revenue increased," he said. Becker's top partners bill $500 an hour, he said. "I don't want to be the low-cost provider. I don't want to be competing on price. I want to compete on quality."

## Top Billing

Many firms, including Greenberg, raised hourly rates for some partners. The survey found the highest-billing lawyer once again was Greenberg partner Mark D. Bloom, co-chair of the firm's business

reorganization and bankruptcy practice and co-managing shareholder of the Miami office, who has been representing failed BankUnited Financial. Bloom remained in the top spot for a third year. His new rate? $785, up $20 from 2009.  Bloom also landed a $3.2 million bonus last year for his firm's "extraordinary" results for creditors as general counsel in the bankruptcy case of Southeast Banking.

The second-highest hourly rate for a second year in a row was Craig Rasile of Hunton & Williams at $735. The rate was unchanged from last year but was subject to discounting, according to documents filed in the Chapter 11 reorganization of Arch Aluminum & Glass, a national construction supplier based in Tamarac.  Hunton and Freeborn & Peters of Chicago represent the creditors and offered a 10 percent rate discount.  The survey also found some of the highest billing rates for associates — $365 an hour — at Greenberg and Hunton.

Some other firms raised rates:
- Berger Singerman partner rates were 4 percent to 5 percent higher than last year. The firm serves as counsel for the bankruptcy trustee for Rothstein Rosenfeldt Adler.
-Genovese Joblove Battista, working with Berger Singerman on the Rothstein case as special counsel and conflicts counsel, boosted rates 5 percent to 15 percent.
- GrayRobinson, working on the Fontainebleau Las Vegas reorganization, hiked fees for some top partners by 10 percent.

Hildebrandt International consultant Joseph Altonji said the type of rate hikes seen in South Florida appeared to fit a national pattern in 2010 when firms with a niche in bankruptcy or real estate litigation were able to raise rates more easily.

"Certain individual lawyers, specific lawyers in high demand, are able to get rate increases," said Altonji, who heads Hildebrandt's LawVision unit. "The significant national trend in the last few years is a tapering down of rate increases. Most firms last year tried selective rate increases, but the average rate increase was in the 2 percent range as opposed to the 7 percent range that it's been, and the rates the clients are paying are not growing a lot."

"The firms will look at their rates this year, but the increases will be focused and selective. They're not going to say, 'We're raising everyone by 5 percent.'??"

**Rothstein Legacy**

That analysis applied to the firms working to recover assets from the behemoth Ponzi scheme operated by imprisoned ex-lawyer Scott Rothstein through his firm. Attorneys for the firms representing the bankruptcy trustee said they have high hopes for recovery from the $1.2 billion scam and discussed their rate structures in light of the case.

"It is a very demanding case on all of us, and we recognize everything we do is under a microscope. If the public had the opportunity to see our bill, I am sure they would consider it to be substantial, and it is," Berger Singerman partner Charles Lichtman said. "But we have been working around the clock to assure that we achieve on a cost-effective basis the maximum amount we can achieve for the creditors." He said it was "too premature" to estimate how much can be recovered for creditors but promised "there will be a material recovery."

"Raising our rates was a function of two things: We are still in a rate of reasonableness when you match us against other firms in Dade and Broward counties. And our rates are not anywhere close to being out of line. We got no pushback from our clients."

At Genovese Joblove Battista, the rate charged by partner John Genovese went up to $595 from $540, and partner Paul Battista's rate increased to $560 from last year's $525. "Every year we evaluate the market and look at particular lawyers. We may make a 5 percent market adjustment, and then we may make an adjustment for particular lawyers," Genovese said. "We are not at the top in rates, and we don't want to be known as the firm charging the highest rates."

"I think some firms do consider that indicative of their skill and quality," he said.  Genovese said the 11-year-old firm prefers to work on a hybrid or contingency rate structure in major litigation and bankruptcy cases, but he said Rothstein's bankruptcy trustee didn't offer that. Firms agreed to a 20 percent discount on their fee applications.

Berger Singerman, as counsel to trustee Herbert Stettin, has billed $4.3 million since the case began last November.  Genovese Joblove Battista, as special counsel and conflicts counsel to the trustee, has billed $1.1 million.

**Las Vegas Via Miami**

In the Fontainebleau Las Vegas Chapter 11, another litigation-heavy, high-billing case that happened to be litigated in Miami, the fees requested by six law firms totaled $8.75 million from June 2009 to the end of August.  The largest chunk — $4.17 million — was billed by the failed casino hotel's general counsel, Bilzin Sumberg Baena Price & Axelrod.

"The Fontainebleau case was a fabulous case," managing partner John Sumberg said. "We got national attention from it. We got inquiries from all over the country as a result of our participation. It was great." He said the firm raised rates selectively this year. "It was not monolithic. The business environment has improved for us dramatically from last year. I'm not bullish on the economy, but we're well-positioned and we have huge amounts of foreclosures. That's where the action is.  That's been very good for us, and it's been a very good year. We've hired a lot of lawyers in the real estate area and litigation area," he said.

Also in the Fontainbleau case:
- Kassowitz Benson Torres & Friedman billed $1.8 million as special litigation counsel.
- Stutman Treister, as counsel to the examiner Jeffrey Truitt, billed $1.9 million.
- Buchanan Ingersoll Rooney in Aventura charged $343,302. The bill showed fee preparation alone can be expensive. The firm billed $3,342 in fee preparation costs to get its $21,404 April invoice ready to submit to the court. It included a 110-minute, $730 phone call between Jack Kessler and another lawyer in the case.

**Real Estate Boom**

The downside in real estate had a clear upside in business for law firms. For instance, newly formed Segall Gordich in Miami, which split from Ruden McClosky this year, is working as counsel for trustee Barry Mukamal in the reorganization of Biscayne Bay Lofts. Biscayne Bay Lofts, developer of the high-rise condo Onyx on the Bay near downtown Miami, was forced into Chapter 7 last year. The case has been converted to a reorganization with a bulk buyer auction of unsold units. With the conversion came a $250,000 carve-out to pay professional fees. The result: The firm has so far billed $139,490, including 240 hours at a rate of $490 for partner Larry Gordich.

But not all the real estate cases meant full fees.  Akerman Senterfitt partner D. Brett Marks discounted his normal $420 fee to $375 in the Chapter 11 case of Miami Beach real estate condo developer Artecity. In another discounted case, an invoice from Marks in the Ocean Development bankruptcy case in West Palm Beach noted his firm was giving a "courtesy discount" by lowering its usual rates for asset recovery

work for creditors by $45 to $75 an hour for partners and associates. Ocean Development is the parent of SunCruz, the Dania Beach gambling boat company whose founder Konstantinos "Gus" Boulis was shot to death in his car in 2001. Shutts & Bowen noted partner Peter H. Levitt discounted his fee for the Lorelei bankruptcy in Islamorada, billing all of its attorneys at a flat $250 an hour.

Looking toward 2011, partners said firms specializing in areas such as real estate litigation and workouts will do fine. Lichtman said he expects a highly competitive market. "I think that's good. It keeps everyone in South Florida law firms on their toes," he said.

Will rates go up? No doubt, at least for some firms."There are people who equate expensive with good. There's a certain amount of prestige for an aloof client to say, 'I have the most expensive lawyer,'??" Becker said. "It's kind of bizarre, but lots of people think that way."